Present:   All the Justices

IN RE: COMMONWEALTH OF VIRGINIA

                                    OPINION BY
                          CHIEF JUSTICE LEROY R. HASSELL, SR.
                                    June 4, 2009
Record Nos. 080282 and 080283

        UPON PETITIONS FOR A WRIT OF MANDAMUS AND A WRIT OF
                          PROHIBITION[1]


                              I.

     In this proceeding, which invokes this Court's original

jurisdiction, we consider whether a writ of mandamus or a writ

of prohibition lies to compel a circuit court, that had

entered a final judgment in a capital murder proceeding, to

vacate that judgment and conduct a hearing to determine

whether a criminal defendant was mentally retarded when he

robbed and murdered the victim.

                              II.

     The underlying capital murder litigation that is the

subject of this proceeding has a very long history that we

will briefly summarize.  In 1998, Daryl Renard Atkins was

convicted in a jury trial of the capital murder of Eric

Michael Nesbitt.  Atkins was sentenced to death.  This Court

affirmed Atkins' conviction for capital murder but vacated the

_____

        [1] Judge N. Prentis Smiley, Jr., who was the original
respondent in this proceeding, died in December 2008, and by
order, this Court substituted the Honorable William H. Shaw,
III as the respondent.

sentence of death because error occurred during the penalty proceeding of the capital murder trial. Atkins v. Commonwealth, 257 Va. 160, 180, 510 S.E.2d 445, 457 (1999).

Upon remand, at the conclusion of a new penalty proceeding, a different jury fixed Atkins' punishment at death. The circuit court imposed the death penalty in accordance with the jury verdict and this Court affirmed the conviction. Atkins v. Commonwealth, 260 Va. 375, 390, 534 S.E.2d 312, 321 (2000) (Hassell & Koontz, JJ., dissenting).

The Supreme Court held in Atkins v. Virginia, 536 U.S. 304, 321 (2002) that the Eighth Amendment to the United States Constitution prohibits the execution of persons who are mentally retarded. The Supreme Court vacated Atkins' judgment of death and this Court remanded the case to the circuit court and directed that the circuit court conduct a jury trial on Atkins' claim that he is mentally retarded and, therefore, not subject to the death penalty.

Upon remand, a jury found that Atkins is not mentally retarded and the circuit court reinstated Atkins' sentence of death. On appeal, however, this Court reversed that judgment because error occurred during the proceeding to determine whether Atkins was mentally retarded. Atkins v. Commonwealth, 272 Va. 144, 161, 631 S.E.2d 93, 102 (2006).

This Court reversed and annulled the final judgment and remanded the case to the circuit court for a new proceeding to determine whether Atkins is mentally retarded.  During this remand, Atkins filed a motion in the circuit court requesting the imposition of a life sentence pursuant to Code § 19.2-264.5 or a new trial.  Atkins asserted that the Commonwealth's Attorney withheld exculpatory evidence and suborned perjury during Atkins' 1998 capital murder trial.  Atkins also asserted that the Commonwealth's Attorney, who allegedly withheld evidence and suborned perjury, should be disqualified from representing the Commonwealth during the proceeding to determine whether Atkins is mentally retarded.  The Commonwealth opposed Atkins' motions and argued that the circuit court lacked jurisdiction to alter the sentence of death without a finding by a jury that Atkins is mentally retarded.  The circuit court entered orders staying the proceeding and Atkins sought an interlocutory appeal to this Court and a writ of mandamus.  This Court denied the interlocutory appeal, dismissed the writ of mandamus, and the proceedings resumed in the circuit court.

The circuit court conducted an evidentiary hearing on Atkins' motions to disqualify the Commonwealth's Attorney and to vacate the sentence of death.  The motions claimed exculpatory evidence violations occurred under the rule of

3

<u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  During the hearing,

Atkins produced the following evidence.  A critical issue in

Atkins' original capital murder trial was whether Atkins or

his accomplice, William Jones, murdered the victim, because

only the triggerman may receive the death penalty under the

facts and circumstances of this case.  On August 6, 1997, the

Commonwealth's Attorney and certain law enforcement personnel

met with Jones and his attorney to prepare Jones for Atkins'

capital murder trial.  This session was recorded with an

audiotape recorder.  At some point during the three-hour trial

preparation session, the Commonwealth's Attorney turned the

audiotape recorder off for sixteen minutes because the

Commonwealth's Attorney thought Jones' testimony was not

" 'going to do [the Commonwealth's case] any good.' "

During the sixteen-minute interval that was not recorded,

the Commonwealth's Attorney, law enforcement officers, and

Jones "acted out" the events related to the murder of Nesbitt.

Jones' initial version of the facts changed after the

rehearsed and coached unrecorded reenactment of the murder.

The circuit court found that the Commonwealth's Attorney

had "coached" Jones after the Commonwealth's Attorney realized

that Jones' initial version of the facts regarding the capital

murder would be "problematic" to the Commonwealth.  The

4

circuit court found that Jones "changed his story.  He modified his story."

The circuit court stated in its final judgment order that:

> "[T]he Office of the Commonwealth Attorney for York County and the City of Poquoson improperly suppressed exculpatory evidence from the August 6, 1997 interview of William Jones, in violation of Brady v. Maryland, 373 U.S. 83 (1963), and that the suppressed information probably would have affected the outcome of Daryl Atkins' trial had it been revealed to Atkins' counsel in 1998."

At the conclusion of the two-day evidentiary hearing, the circuit court set aside Atkins' sentence of death and imposed a sentence of life imprisonment without the possibility of parole "based on the newly discovered evidence of a Brady violation."[2]

### III.

### A.

The Commonwealth asserts that mandamus is an appropriate remedy that the Commonwealth may utilize to compel Judge Shaw to vacate the circuit court's judgment, dated January 24, 2008, that set aside Atkins' sentence of death and sentenced

---

[2] Generally, the remedy for a Brady violation is not a reduction in the sentence but a new trial, "if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury.' "  United States v. Bagley, 473 U.S. 667, 677 (1985) (quoting Giglio v. United States, 405 U.S. 150, 154 (1972)); see also Workman v. Commonwealth, 272 Va. 633, 651, 636 S.E.2d 368, 378 (2006);

him to life in the penitentiary without the possibility of parole. We disagree with the Commonwealth.

The writ of mandamus is an extraordinary remedy and for that reason this Court has carefully scrutinized and imposed limitations upon the use of this writ. This Court has consistently stated the following pertinent principles:

> "A writ of mandamus is an extraordinary remedial process, which is not awarded as a matter of right but in the exercise of a sound judicial discretion. Due to the drastic character of the writ, the law has placed safeguards around it. Consideration should be had for the urgency which prompts an exercise of the discretion, the interests of the public and third persons, the results which would follow upon a refusal of the writ, as well as the promotion of substantial justice. In doubtful cases the writ will be denied, but [when] the right involved and the duty sought to be enforced are clear and certain and [when] there is no other available specific and adequate remedy the writ will issue."

Gannon v. State Corp. Commission, 243 Va. 480, 482, 416 S.E.2d 446, 447 (1992) (quoting Richmond-Greyhound Lines v. Davis, 200 Va. 147, 151-52, 104 S.E.2d 813, 816 (1958)); accord Umstattd v. Centex Homes, 274 Va. 541, 545-46, 650 S.E.2d 527, 530 (2007); Hertz v. Times-World Corporation, 259 Va. 599, 607-08, 528 S.E.2d 458, 462-63 (2000); Williams v. Matthews, 248 Va. 277, 281, 448 S.E.2d 625, 627 (1994); Railroad Company v. Fugate, 206 Va. 159, 162, 142 S.E.2d 546, 548-49 (1965). We stated, over 130 years ago, that:

---

Bowman v. Commonwealth, 248 Va. 130, 135, 445 S.E.2d 110, 112-

"In relation to courts and judicial officers, [mandamus] cannot be made to perform the functions of a writ of error or appeal, or other legal proceeding to review or correct errors, or to anticipate and forestall judicial action. It may be appropriately used and is often used to compel courts to act [when] they refuse to act and ought to act, but not to direct and control the judicial discretion to be exercised in the performance of the act to be done; to compel courts to hear and decide where they have jurisdiction, but not to pre-determine the decision to be made; to require them to proceed to judgment, but not to fix and prescribe the judgment to be rendered."

Page v. Clopton, 71 Va. (30 Gratt.) 415, 418 (1878).

This Court also stated, over a century ago, that: "It is also well settled that mandamus does not lie to compel an officer to undo what he has done in the exercise of his judgment and discretion, and to do what he had already determined ought not to be done." Thurston v. Hudgins, 93 Va. 780, 784, 20 S.E. 966, 968 (1895). We acknowledged this important precept in Board of Supervisors v. Combs, 160 Va. 487, 498, 169 S.E. 589, 593 (1933) and observed:

"Mandamus is prospective merely . . . . It is not a preventive remedy; its purpose and object is to command performance, not desistance, and is a compulsory as distinguished from a revisory writ; it lies to compel, not to revise or correct action, however erroneous it may have been, and is not like a writ of error or appeal, a remedy for erroneous decisions."

160 Va. at 498, 169 S.E.2d at 593; see also Harrison v. Barksdale, 127 Va. 180, 188-89, 102 S.E. 789, 792 (1920). We restated this elemental precept in Richlands Medical Ass'n v.

13 (1994).

7

Commonwealth, 230 Va. 384, 387, 337 S.E.2d 737, 740 (1985): "[M]andamus is applied prospectively only; it will not be granted to undo an act already done." We recently repeated this principle when we stated in In re: Commonwealth's Attorney, 265 Va. 313, 319 n.4, 576 S.E.2d 458, 462 n.4 (2003) that "mandamus will [not] lie to undo acts already done."

Applying this fundamental principle of jurisprudence in the present proceeding, we hold that mandamus does not lie. The circuit court entered a final judgment in Atkins' capital murder case on January 24, 2008. This final judgment is an act that the circuit court has performed and the Commonwealth seeks to use mandamus as a procedural mechanism to vacate or "undo" the circuit court's judgment. We hold that mandamus cannot be used by the Commonwealth or any other litigant to collaterally attack or vacate a final judgment entered by a circuit court upon the conclusion of a criminal proceeding.

### B.

The Commonwealth contends that upon the entry of this Court's mandate, directing the circuit court to conduct an evidentiary hearing to determine whether Atkins is mentally retarded, the circuit court was required to conduct that hearing but lacked discretion to consider any other legal issues. We disagree with the Commonwealth.

This Court's mandate that remanded this proceeding to the circuit court for the mental retardation hearing did not divest the circuit court of its authority and discretion to consider legal issues that the Commonwealth and Atkins raised upon remand.  We stated in Powell v. Commonwealth, 267 Va. 107, 128, 590 S.E.2d 537, 550 (2004): "[W]hile the directive of this Court's mandate binds the circuit court, that court is not thereby prohibited from acting on matters not constrained by the language of the mandate."  Additionally, the United States Supreme Court has stated: "While a mandate is controlling as to matters within its compass, on remand a lower court is free as to other issues."  Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 168 (1939).  We hold that a circuit court presiding during a remand of a capital murder proceeding retains authority and discretion to resolve legal issues that the litigants raise.  A contrary holding would disrupt and impair the circuit court's authority to preside during a remand of a criminal proceeding.

Additionally, the Commonwealth's position that a circuit court upon a remand must only consider the issue that is the subject of the remand would prohibit a circuit court from determining legal issues that affect a litigant's right to an impartial and fair trial.  For example, a defendant would not be allowed to assert during a remand, as Atkins did in his

9

capital murder case, that a Commonwealth's Attorney should not be allowed to prosecute the case because a conflict of interest exists. Likewise, under the Commonwealth's view, a litigant would not be able to assert that a court lacked subject matter jurisdiction even though it is an elemental precept that the lack of subject matter jurisdiction can be raised at any time, including post-judgment.

The Commonwealth further suggests that the circuit court lacked subject matter jurisdiction to consider any issue other than the mental retardation hearing. The Commonwealth's argument suffers from a fundamental misunderstanding of the nature of a circuit court's subject matter jurisdiction. For example, we have stated:

> "Subject matter jurisdiction refers to a court's power to adjudicate a class of cases or controversies, and this power must be granted through a constitution or statute. Subject matter jurisdiction cannot be waived or conferred on a court by the litigants and the lack of subject matter jurisdiction may be raised at any time."

Jenkins v. Director, Va. Ctr. for Behav. Rehab., 271 Va. 4, 13, 624 S.E.2d 453, 458 (2006) (citations omitted); accord Nelson v. Warden, 262 Va. 276, 281, 552 S.E.2d 73, 75 (2001); Morrison v. Bestler, 239 Va. 166, 169, 387 S.E.2d 753, 755 (1990); Humphreys v. Commonwealth, 186 Va. 765, 772-73, 43 S.E.2d 890, 894 (1947); Farant

10

Investment Corp. v. Francis, 138 Va. 417, 427-28, 122 S.E. 141, 144 (1924).

Without question, upon remand of Atkins' criminal proceeding from this Court to the circuit court, that court had subject matter jurisdiction over the entire capital murder case. Subject matter jurisdiction is conferred by statute according to the subject of the case, in this instance capital murder, rather than according to a particular proceeding that may be one part of a capital murder case. See Code § 17.1-513; Porter v. Commonwealth, 276 Va. 203, 229, 661 S.E.2d 415, 427 (2008); In re: Commonwealth's Attorney, 265 Va. at 317, 576 S.E.2d at 461; Garza v. Commonwealth, 228 Va. 559, 565-66, 323 S.E.2d 127, 130 (1984).

C.

In the present mandamus proceeding, the Commonwealth asserts that the circuit court was without authority to consider any issue other than whether Atkins is mentally retarded. However, the Commonwealth's Attorney specifically asked the circuit court, during the remanded criminal proceeding, to rule on Atkins' motion to disqualify the Commonwealth's Attorney because he allegedly created and procured perjured testimony in Atkins' original trial. The Commonwealth's Attorney stated to the court:

11

"[T]he Commonwealth adamantly denies these allegations, but the reality is they have been made. They are very serious, and they go to the fitness of counsel. Should the Commonwealth have made similar allegations against defense counsel, it would be an issue of fitness of counsel to proceed, and I believe that's where we are, and I believe that the Court should have an evidentiary hearing on these allegations. The Court, I do not believe, has the jurisdiction to grant a new trial because of it, but the Court should, I think, resolve this issue before we proceed with the trial.

The Court: "Well, the resolution - I mean, you made that representation earlier I think to resolve it only to resolve it in favor of the Commonwealth, and I think to invite the Court to resolve it you have to allow the Court, in an evidentiary proceeding, to go either way with it.

The Commonwealth's Attorney: "Absolutely.

The Court: "So -- and with all due respect to the Virginia Supreme Court, they have directed me back to the issue of mental retardation, and by that direction, I mean, that's the marching orders of the Court.

The Commonwealth's Attorney: "I understand that, Your Honor, but the question remains who are the parties going to be in that trial, and at this point, there is an allegation that's been made that clearly implicates fitness of counsel for the Commonwealth to proceed in that trial."

We will not permit the Commonwealth to ask the circuit court during the remanded hearing on mental retardation to exercise discretion and rule upon other legal issues but, inconsistently, assert in the mandamus proceeding that the circuit court lacked legal authority to do so. The Commonwealth will not be allowed to

12

approbate and reprobate. _Garlock Sealing Technologies,
LLC v. Little_, 270 Va. 381, 388, 620 S.E.2d 773, 777
(2005); _Cohn v. Knowledge Connections, Inc._, 266 Va. 362,
367, 585 S.E.2d 578, 581 (2003); _Hansen v. Stanley Martin
Companies_, 266 Va. 345, 358, 585 S.E.2d 567, 575 (2003);
_Fisher v. Commonwealth_, 236 Va. 403, 417, 374 S.E.2d 46,
54 (1988).

                                D.

     We also note that Code § 19.2-264.5 confers upon a
circuit court, presiding in a capital murder trial, the
authority to reduce a jury's verdict of death to a
sentence of imprisonment for life.  Code § 19.2-264.5
states in relevant part:

> "After the consideration of the [post-sentence]
> report, and upon good cause shown, the court may set
> aside the sentence of death and impose a sentence of
> imprisonment for life.  Notwithstanding any other
> provision of law, if the court sets aside the
> sentence of death and imposes a sentence of
> imprisonment for life, it shall include in the
> sentencing order an explanation for the reduction in
> the sentence."

     As we have stated above, the mandate that remanded
this proceeding to the circuit court for the mental
retardation hearing also "reversed and annulled" the
final judgment in Atkins' capital murder case and the
circuit court was required to enter a judgment upon the
conclusion of the capital murder proceedings.  If we were

                                13

to accept the Commonwealth's argument in this case - that the circuit court upon remand could only conduct the mental retardation hearing and not consider any other legal issues - we would improperly divest the circuit court of its authority and discretion conferred by Code § 19.2-264.5.  Additionally, the logical conclusion of the Commonwealth's erroneous argument is that the circuit court would have lacked authority to enter a final judgment.

### E.

We also reject the Commonwealth's contention that mandamus lies for yet another reason.  The Commonwealth essentially seeks, using the guise of a mandamus proceeding, to appeal the circuit court's judgment that imposed upon Atkins the sentence of life imprisonment without parole.  Pursuant to Article VI, Section 1 of the Constitution of Virginia and Code § 19.2-398, the Commonwealth has a very limited right of appeal in a criminal case.  This limited right of appeal does not include a right to appeal the circuit court's final judgment entered in Atkins' capital murder trial.  The Commonwealth seeks to circumvent and expand the constitutional and statutory limitations imposed on its limited right to appeal in a criminal case by challenging

14

a final judgment in this mandamus proceeding.  Mandamus may not be used as a substitute or guise for an appeal in a criminal proceeding because the Commonwealth's appellate rights are strictly prescribed by the Constitution of Virginia and Code § 19.2-398.  See Hertz, 259 Va. at 610, 528 S.E.2d at 464 ("mandamus cannot be used as a substitute for an appeal"); Morrissette v. McGinniss, 246 Va. 378, 382, 436 S.E.2d 433, 435 (1993); Richlands Medical Ass'n, 230 Va. at 387, 337 S.E.2d at 740; Moon v. Welford, 84 Va. 34, 38, 4 S.E. 572, 575 (1887).

## F.

We reject the Commonwealth's assertion that this Court's decision in In re: Robert F. Horan, Jr., 271 Va. 258, 634 S.E.2d 675 (2006) requires that we grant the petition for writ of mandamus.  In Horan, we considered whether a circuit court could enter a pre-trial order that prohibited the Commonwealth from seeking the death penalty in a capital murder proceeding that was pending in that circuit court.  We granted the petition for a writ of mandamus on the very narrow basis that pursuant to Virginia's capital murder statutory scheme, the circuit court did not have authority to make a sentencing decision when ruling upon a pre-trial motion and, hence, the circuit court's action was not within its discretion.

15

Our decision in Horan is not controlling in this proceeding, which involves a final judgment that has been entered in a criminal proceeding. Our holding in Horan is limited to the unique procedural history in that case, which did not involve a collateral attack upon a final judgment in a criminal proceeding. Moreover, this Court did not consider or discuss in Horan whether the circuit court's order that prohibited the Commonwealth from seeking the death penalty was an act performed by the circuit court which could not be undone.

                              G.

As we have previously stated, in part III, section A of this opinion, a purpose of the writ of mandamus, which is an extraordinary remedy, is the promotion of substantial justice. See Gannon, 243 Va. at 482, 416 S.E.2d at 447; Railroad Company, 206 Va. at 162, 142 S.E.2d at 548; Richmond-Greyhound Lines, 200 Va. at 151-52, 104 S.E.2d at 816. The promotion of substantial justice has served as a prerequisite to the issuance of a writ of mandamus in this Commonwealth for almost 200 years. For example, we stated in Commonwealth v. Justices of Fairfax County Court, 4 Va. (2 Va. Cas.) 9, 13 (1815) (emphasis in original omitted; other emphasis added):

> "A mandamus is a prerogative writ; to the aid of
> which the subject is entitled upon a proper case
> previously shewn to the satisfaction of the Court.

16

The original nature of the writ, and the end for which it was framed, direct upon what occasions it shall be used. It was introduced <u>to prevent disorder from a failure of justice</u>, and defect of police. Therefore, it ought to be used upon all occasions where the law has established no specific remedy, and where in justice and good government there ought to be one."

In the present proceeding, clearly, the issuance of a writ of mandamus would not prevent "disorder from a failure of justice." <u>Id.</u> A critical issue during the trial of Atkins' capital murder case was whether Atkins or his accomplice, Jones, was the triggerman who fired the gun that killed the victim. Based upon the facts in this record, only the triggerman could be subject to a sentence of death. Atkins claimed that the accomplice was the triggerman but the accomplice countered that Atkins was the triggerman.

Based upon the record before this Court, including the circuit court's final judgment, the circuit court had no confidence in the integrity of the judicial process and the jury verdict that resulted in Atkins' sentence of death. The circuit court found that the Commonwealth's Attorney had "coached" the accomplice who was involved in the murder after the Commonwealth's Attorney realized that the accomplice would have testified about facts that would have been "problematic" to the Commonwealth's case.

17

The circuit court found that the accomplice "changed his story . . . [h]e modified his story," and, the circuit court held that information that the Commonwealth suppressed "probably would have affected the outcome of Daryl Atkins' trial."  Simply stated, the coached accomplice may very well have "changed his story" in order to escape the possibility of a sentence of death. Therefore, issuance of a writ of mandamus would not prevent a failure of justice but merely would serve to ignore the reality of the present case that justice was not served by the Commonwealth's deliberate use of "coached" testimony.

H.

The dissent, relying principally upon this Court's decisions in Horan, 271 Va. 258, 634 S.E.2d 675, In re: Morrissey, 246 Va. 333, 433 S.E.2d 918 (1993), Davis v. Sexton, 211 Va. 410, 177 S.E.2d 524 (1970), Kirk v. Carter, 202 Va. 335, 117 S.E.2d 135 (1960), Richardson v. Farrar, 88 Va. 760, 15 S.E. 117 (1892), Wilder v. Kelley, 88 Va. 274, 13 S.E. 483 (1891), Kent, Paine & Co. v. Dickinson, 66 Va. (25 Gratt.) 817 (1875), and Cowan v. Fulton, 64 Va. (23 Gratt.) 579 (1873), argues that these cases support a conclusion that a writ of mandamus lies to compel a circuit court to vacate a

18

final judgment entered in a capital murder proceeding.  We disagree with the dissent.

Our decisions in Horan, Morrissey, Davis, Kirk, Richardson, Wilder, Kent, Paine & Co., and Cowan, do not involve final judgments entered in criminal proceedings.  As we have discussed in part III, sections C, D, and E of this opinion, there are numerous substantive reasons why the Commonwealth should not be allowed to use a mandamus proceeding to invalidate a final judgment in a criminal case.  And, our decision in Horan is not pertinent to our resolution of this proceeding for the reasons stated in part III, section F of this opinion.

Our decision in In re: Commonwealth of Virginia, 229 Va. 159, 326 S.E.2d 695 (1985) is consistent with our holding today.  Contrary to the dissent's assertion, our decision to grant the writ of mandamus in In re: Commonwealth of Virginia, did not have the effect of invalidating a final judgment in a criminal case.  In In re: Commonwealth, the circuit court withheld imposition of sentence for a defendant's firearm conviction "until September 26, 1985, a period of Twelve (12) months, upon the conditions that [the defendant]: (1) keep the peace and be of good behavior and obey all laws, (2) continue with psychiatric care and treatment with reports to the

19

Court every Ninety (90) days." Id. at 161, 326 S.E.2d at 697.

The order that withheld imposition of sentence upon the firearm conviction was not a final judgment entered at the conclusion of a criminal case. Pursuant to the specific terms of the order, the defendant would have been required to return to the circuit court after a period of twelve months and the court would then have to decide whether to impose a sentence for the firearm violation. Indeed, the very reason that the Commonwealth filed a petition for a writ of mandamus in In re: Commonwealth was to compel the circuit court to enter a judgment that sentenced the defendant in accordance with the criminal firearm statute. See id. at 160-61, 326 S.E.2d at 696.

IV.

The Commonwealth also asserts that this Court should grant the Commonwealth's petition for a writ of prohibition. The Commonwealth argues that the circuit court exceeded the jurisdictional limits of this Court's 2006 mandate which states: "[T]he case is remanded to the . . . circuit court for a new proceeding . . . to determine whether [Atkins] is mentally retarded."

20

We do not consider the Commonwealth's argument because prohibition clearly does not lie for a reason that the Commonwealth does not mention. We have stated:

> "The writ of prohibition, as its name imports, is one which commands the person to whom it is directed not to do something which . . . the court is informed he is about to do. If the thing be already done, it is manifest the writ of prohibition cannot undo it, for that would require an affirmative act; and the only effect of a writ of prohibition is to suspend all action, and to prevent any further proceeding in the prohibited direction."

In re: Dept. of Corrections, 222 Va. 454, 461, 281 S.E.2d 857, 861 (1981) (quoting United States v. Hoffman, 71 U.S. (4 Wall.) 158, 161-62 (1867)). And, as we recently stated in In re: Commonwealth's Attorney, 265 Va. at 319 n.4, 576 S.E.2d at 462 n.4, "prohibition . . . will [not] lie to undo acts already done." The circuit court in this case has entered a final judgment in Atkins' capital murder proceeding which is an act "already done" and a petition for a writ of prohibition cannot be used to vacate or "undo" that final judgment.

V.

For the forgoing reasons, we will dismiss the Commonwealth's petition for writ of mandamus and petition for writ of prohibition.

Record No. 080282 – Petition dismissed.
Record No. 080283 – Petition dismissed.


JUSTICE KINSER, with whom JUSTICE LEMONS joins, dissenting.

21

Today, the majority holds that a writ of mandamus does not lie to compel the Circuit Court of York County (the Circuit Court) to comply with this Court's mandates on the basis that mandamus, if issued, would undo an act already done. Our jurisprudence does not support that conclusion because we have issued mandamus in numerous cases when the writ, either directly or implicitly, undid an act already done. Further, the Circuit Court had no discretion to disregard our mandates, the Commonwealth has a clear right to the relief requested, and it has no other adequate remedy to enforce that right. Moreover, in Wilder v. Kelley, 88 Va. 274, 13 S.E. 483 (1891), we issued a writ of mandamus to compel a circuit court judge to enter and enforce an order of this Court granting an injunction. Id. at 283, 13 S.E. at 486.

For the same reason, the majority likewise holds that a writ of prohibition does not lie. As with mandamus, this Court has issued a writ of prohibition on several occasions when the writ undid an act already done. Moreover, in the unique circumstances of this case, the Circuit Court exceeded its jurisdiction when it entered the order setting aside a death sentence. Contrary to the majority, I would issue a writ of mandamus and a writ of prohibition. Thus, I respectfully dissent.

## I.  PRIOR RELEVANT PROCEEDINGS

Before explaining why I conclude mandamus and prohibition lie in this case, I find it necessary to summarize the procedural history culminating in this Court's two separate mandates ordering the Circuit Court to conduct a hearing to determine whether Daryl Renard Atkins is mentally retarded. After a jury trial in the Circuit Court, Atkins was sentenced to death for the murder of Eric Michael Nesbitt during the commission of robbery.  This Court affirmed the judgment of conviction but vacated the sentence of death and remanded the case to the Circuit Court for a new sentencing hearing. Atkins v. Commonwealth, 257 Va. 160, 180, 510 S.E.2d 445, 457 (1999) (Atkins I).  At the re-sentencing proceeding, a different jury imposed the death penalty, and the Circuit Court sentenced Atkins in accordance with the jury's verdict. Upon appeal to this Court, we upheld the Circuit Court's judgment and sentence of death.  Atkins v. Commonwealth, 260 Va. 375, 379, 534 S.E.2d 312, 314 (2000) (Atkins II).

The United States Supreme Court subsequently granted Atkins a writ of certiorari on the sole issue "[w]hether the execution of mentally retarded individuals convicted of capital crimes violates the Eighth Amendment[.]"  Atkins v. Virginia, 534 U.S. 809, 809 (2001).  In its decision, the United States Supreme Court held that the execution of

mentally retarded individuals is excessive punishment, and therefore violates the Eighth Amendment.  Atkins v. Virginia, 536 U.S. 304, 320-21 (2002) (Atkins III).  The United States Supreme Court thus reversed our judgment with respect to Atkins' sentence and remanded the case to this Court for further proceedings.  Id. at 321.

In accordance with emergency legislation enacted by the General Assembly to establish procedures for determining whether a defendant convicted of capital murder is mentally retarded, see Code §§ 8.01-654.2, 19.2-264.3:1.1, 19.2-264.3:1.2, and 19.2-264.3:3, and the mandate of the United States Supreme Court, this Court remanded Atkins' case to the Circuit Court for " 'the sole purpose of making a determination of mental retardation.' "  Atkins v. Commonwealth, 266 Va. 73, 79, 581 S.E.2d 514, 517 (2003) (quoting Code § 8.01-654.2) (Atkins IV).  At the conclusion of the mental retardation hearing conducted on remand, a third jury found that Atkins failed to prove by a preponderance of the evidence that he is mentally retarded under Code § 19.2-264.3:1.1(A).  Accordingly, the Circuit Court reinstated Atkins' death sentence.

We awarded Atkins an appeal and reversed the Circuit Court's judgment.  Atkins v. Commonwealth, 272 Va. 144, 158, 631 S.E.2d 93, 100 (2006) (Atkins V).  We then remanded the

24

case again so the Circuit Court could conduct a "new proceeding to determine whether Atkins is mentally retarded." Id. In the mandate to the Circuit Court dated October 18, 2006, we stated, in relevant part: "[T]he judgment is reversed and annulled, the verdict of the jury is set aside, and the case is remanded to the said [C]ircuit [C]ourt for a new proceeding . . . to determine whether [Atkins] is mentally retarded."

Subsequent to the remand in Atkins V, Atkins filed a "Motion to Impose Life Sentence Based Upon Newly-Discovered Evidence of Brady and Napue Violations." The Circuit Court entered an order certifying an interlocutory appeal pursuant to Code § 8.01-670.1 and requesting this Court to decide whether, upon remand pursuant to Code § 8.01-654.2, the Circuit Court was "prohibited or restricted from exercising jurisdiction to hear" Atkins' motion and order an appropriate remedy. In addition, Atkins petitioned for a writ of mandamus, requesting this Court to direct the Circuit Court to hear and decide his motion.

This Court entered an order refusing the interlocutory appeal on the basis that Code § 8.01-670.1 is inapplicable in a criminal case. The order contained the following mandate:

> The [C]ircuit [C]ourt is directed to proceed with this criminal case. Such proceeding is confined to the terms of the mandate issued by the

25

Court on October 18, 2006 remanding this case to the [C]ircuit [C]ourt for <u>a jury determination of whether Atkins is mentally retarded</u>.

(Emphasis added.).  The order also summarily dismissed Atkins' petition for a writ of mandamus.

Instead of conducting the mandated hearing to determine whether Atkins is mentally retarded, the Circuit Court granted Atkins' motion, finding the Commonwealth had withheld exculpatory evidence in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  Relying on the provisions of Code § 19.2-264.5, the Circuit Court set aside Atkins' sentence of death and sentenced him to "imprisonment for life without the possibility of parole."

This procedural history brings us to the present proceedings.  After the Circuit Court refused to conduct the hearing to determine whether Atkins is mentally retarded, the Commonwealth filed separate petitions seeking a writ of mandamus and a writ of prohibition.  I will address each of these extraordinary writs separately.

## II. MANDAMUS

In its petition for a writ of mandamus, the Commonwealth requested that mandamus be issued compelling the Circuit Court to conduct a hearing to determine whether Atkins is mentally retarded in accordance with this Court's mandates.  The issue in this case is whether a writ of mandamus lies to compel the

26

Circuit Court to conduct that hearing, not whether mandamus lies to compel a circuit court to vacate an order, as stated by the majority.  Because the Circuit Court did not have any discretion to disregard this Court's mandates, and because the Commonwealth has a clear right to the relief requested and no other adequate remedy to enforce its right, I would issue the writ of mandamus compelling the Circuit Court to conduct the mental retardation hearing as previously mandated by this Court.

"Before a writ of mandamus may issue there must be a clear right in the petitioner to the relief sought, there must be a legal duty on the part of the respondent to perform the act which the petitioner seeks to compel, and there must be no adequate remedy at law."  Board of County Supervisors v. Hylton Enterprises, Inc., 216 Va. 582, 584, 221 S.E.2d 534, 536 (1976) (citing Richmond-Greyhound Lines v. Davis, 200 Va. 147, 152, 104 S.E.2d 813, 817 (1958)).  "[Mandamus] was introduced to prevent disorder from a failure of justice, and defect of police.  Therefore, it ought to be used upon all occasions where the law has established no specific remedy, and where in justice and good government there ought to be one."  Commonwealth v. Justices of Fairfax County Court, 4 Va. (2 Va. Cas.) 9, 13 (1815) (internal quotation marks omitted)

(emphasis added); accord Lewis v. Whittle, 77 Va. 415, 417 (1883).

" 'Mandamus is an extraordinary remedy employed to compel a public official to perform a purely ministerial duty imposed upon him by law.' " In re: Horan, 271 Va. 258, 258, 634 S.E.2d 675, 676 (2006) (quoting Richlands Med. Ass'n v. Commonwealth, 230 Va. 384, 386, 337 S.E.2d 737, 739 (1985)); accord Griffin v. Board of Supervisors, 203 Va. 321, 328, 124 S.E.2d 227, 233 (1962). "A ministerial act is an act that one performs in obedience to a legal mandate and in a prescribed manner, without regard to his own judgment as to the propriety of the act to be done." City of Richmond v. Hayes, 212 Va. 428, 429, 184 S.E.2d 784, 785 (1971) (citing Dovel v. Bertram, 184 Va. 19, 22, 34 S.E.2d 369, 370 (1945)); accord In re: Horan, 271 Va. at 258-59, 634 S.E.2d at 676; Richlands Med. Ass'n, 230 Va. at 386, 337 S.E.2d at 739.

Specifically with regard to mandamus directed to an inferior court, we have previously explained that

> mandamus may be appropriately used and is often used to compel courts to act where they refuse to act and ought to act, but not to direct and control the judicial discretion to be exercised in the performance of the act to be done; to compel courts to hear and decide where they have jurisdiction, but not to pre-determine the decision to be made; to require them to proceed to judgment, but not to fix and prescribe the judgment to be rendered.

28

Page v. Clopton, 71 Va. (30 Gratt.) 415, 418 (1878); accord In re: Horan, 271 Va. at 259, 634 S.E.2d at 676.

Whether a writ of mandamus should issue in this case is inextricably linked to this Court's mandates directing the Circuit Court to conduct the hearing to determine whether Atkins is mentally retarded. Pursuant to what we recognize as the "mandate rule," a "trial judge is bound by a decision and mandate from [an appellate court], unless [the court] acted outside [its] jurisdiction. A trial court has no discretion to disregard [a] lawful mandate."[1]  Powell v. Commonwealth, 267 Va. 107, 127, 590 S.E.2d 537, 549 (2004) (alterations in original) (emphasis added); see also United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993) ("[I]t is indisputable that a lower court generally is bound to carry the mandate of the upper court into execution and [may] not consider the questions which the mandate laid at rest. [The "mandate rule"] compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court. . . . Thus, when [an appellate] court remands for further proceedings, a [lower] court must . . . implement both the letter and spirit

---

[1] The remand of Atkins' case, pursuant to this Court's mandate, was a "limited" remand, as opposed to a "general" remand, for the sole purpose of conducting a mental retardation hearing.  See infra note 11.

29

of the . . . mandate, taking into account [the appellate court's] opinion and the circumstances it embraces.") (second and seventh alterations in original) (internal quotation marks and citations omitted); Strayer v. Long, 83 Va. 715, 717-18, 3 S.E. 372, 373-74 (1887) (recognizing that a circuit court is bound by the decree of this Court "and must obey it").

Pursuant to our mandates, the Circuit Court had no discretion to refuse to conduct the mental retardation hearing; the duty of the Circuit Court to do so was purely ministerial. See Wilder, 88 Va. at 282, 13 S.E. at 485 ("When a mandate goes down from the appellate tribunal to the inferior tribunal, whose action has been reviewed and reversed, there is no discretion; . . . and the simple province of the inferior tribunal is to obey the command of the superior."). Furthermore, the Commonwealth could not appeal the Circuit Court's refusal to conduct the hearing and thus has no adequate remedy at law.[2] See In re: Horan, 271 Va.

---

[2] Mandamus does not lie when a petitioner has an adequate remedy at law by virtue of an appeal. See Richlands Med. Ass'n, 230 Va. at 387, 337 S.E.2d at 740 ("mandamus may not be used as a substitute for an appeal"). The majority turns this well-established principle on its head by holding that, since the Commonwealth does not have the right to appeal the Circuit Court's judgment setting aside Atkins' death sentence, mandamus does not lie because it would be a guise for an appeal the Commonwealth does not have. In other words, according to the majority, if a petitioner does not have a right of appeal, mandamus will not lie because it would be a substitute for a non-existent appeal. The result of the

at 265, 634 S.E.2d at 680. Thus, I would issue a writ of mandamus compelling the Circuit Court to conduct the mental retardation hearing. "When the action of a court is 'a simple refusal to hear and decide the case; and this [C]ourt having held that no appeal lies from such refusal, it is exactly the case to which the highly remedial writ of mandamus is most frequently applied, in order to prevent a defect or failure of justice.' " Id. at 260, 634 S.E.2d at 677 (quoting Cowan v. Fulton, 64 Va. (23 Gratt.) 579, 584 (1873)); Smoleski v. County Court, 168 S.E.2d 521, 523 (W. Va. 1969) ("compliance with [an appellate court's] mandate in relation to a proceeding in a trial court may be compelled and . . . mandamus is the proper remedy to require such compliance").

In an analogous case, as I initially pointed out, we have previously issued a writ of mandamus compelling a circuit court to comply with a mandate from this Court. In Wilder, a circuit court judge, who was the respondent in the mandamus proceeding, refused to grant an injunction. 88 Va. at 275, 13 S.E. at 483. Acting pursuant to former Code § 3438 (now Code § 8.01-626), a justice of this Court awarded the injunction as requested by the complainants. Id. at 275-76, 13 S.E. at 483.

majority's decision is that what was once a prerequisite to seeking relief by mandamus, i.e., that there be no other adequate remedy at law, is now a barrier to seeking such relief.

31

The circuit court judge, however, then refused to enforce the order of this Court and, instead, heard "a motion to dissolve the injunction of the appellate judge, and . . . a motion to enjoin and restrain the order of such judge, and also . . . rules for contempt, and decided that there was no jurisdiction in a single judge of the Supreme Court of Appeals[3] to control . . . the action of a circuit court in its direction to its receiver, or in enforcing injunctions pending in the circuit court." Id. at 277, 13 S.E. at 484. The circuit court judge held that "the order of the appellate judge was null and void, and that the partial possession obtained under it was unlawful, and dismissed the proceedings for contempt for disobedience thereto, and, without otherwise disposing of the case on it merits, continued the same." Id.

The petitioners, who obtained the injunction in this Court, sought a writ of mandamus to compel the circuit court judge to "enter and enforce the order . . . of the appellate judge." Id. The question before us was "whether mandamus [was] the proper remedy to compel this judge to obey the law, or if he may annul the order, and by dilatory orders and continuances, under the guise of exercising judicial

---

[3] The 1971 Constitution of Virginia changed the name of this Court from the "Supreme Court of Appeals" to the "Supreme Court," and changed the designation for members of this Court from "judges" to "justices."

32

discretion, reviewable by appeal only, entirely defeat the same." Id. at 280, 13 S.E. at 485.

The respondent in Wilder argued that mandamus did not lie to correct his erroneous judicial acts. Id. at 277, 13 S.E. at 484. We disagreed, however, and stated:

> The general rule on this subject is that, if the inferior tribunal or corporate body has a discretion and exercises it, this discretion cannot be controlled by mandamus; but if the inferior tribunal refuse when the law requires them to act, and the party has no other adequate legal remedy, and when, in justice, there ought to be one, mandamus will lie to set them in motion to compel action, and, in proper cases, the court will settle the legal principle which should govern, but without controlling the discretion of the subordinate jurisdiction.

Id. at 281, 13 S.E. at 485.

In deciding to issue a writ of mandamus as requested by the petitioners, we held:

> When a mandate goes down from the appellate tribunal to the inferior tribunal, whose action has been reviewed and reversed, there is no discretion; that has been exercised, and in the exercise been exhausted, so far as it is established by the law; and the simple province of the inferior tribunal is to obey the command of the superior.
>
> . . . .
>
> It is settled law that when this order from an appellate court or an appellate judge, made in review of the order of an inferior court, comes down, the lower court must enter and enforce it. It is an order in his court in the latter case, and it is an order in his court in the former case; but it is there in each case for him to enter and obey. He may not set aside and annul it upon any pretext

> whatever.  That may be done in a proper case by the
> Court of Appeals when, in the latter case, it
> reaches that tribunal; but it is not the province of
> the lower court to do this.  Being, then, a matter
> of plain duty, and in no wise dependent upon any
> discretion of any sort, it must be entered and
> enforced as made, and mandamus will lie to enforce
> the performance of this plain legal duty.

Id. at 282-83, 13 S.E. at 485-86.  As in Wilder, mandamus should issue in the case before us to ensure that the Circuit Court obeys the mandates from this Court.

The majority, however, holds that it is inappropriate to issue a writ of mandamus in the present case because to do so would undo an act already done.  According to the majority, mandamus would compel the Circuit Court to vacate its order setting aside Atkins' death sentence and imposing a life sentence without the possibility of parole.  It is correct that a writ of mandamus "will not be granted to undo an act already done."  Richlands Med. Ass'n, 230 Va. at 387, 337 S.E.2d at 740.  In my view, the majority merely recites this principle and then applies it in the case before us without actually examining the facts, not only of the cases upon which the majority relies, but also of the numerous cases in which this Court's issuance of a writ of mandamus either directly compelled an act to be undone or had the incidental effect of undoing an act already done even though the writ itself did not specifically do so.

For instance, in In re: Horan, this Court issued a writ of mandamus directing a circuit court judge to allow the Commonwealth's Attorney to seek the death penalty in a particular criminal case. 271 Va. at 265, 634 S.E.2d at 680. We did so although the circuit court judge had already entered an order prohibiting the Commonwealth from seeking the death penalty. Id. at 258, 634 S.E.2d at 676. The majority states there is a difference between the pre-trial order in In re: Horan and the "final judgment" in this case. That distinction has no significance with regard to whether a writ of mandamus is appropriate. In both instances, the respective orders had been entered when the petitions for writs of mandamus were filed. Furthermore, this Court has issued writs of mandamus even though the writ had the effect of undoing a final judgment. See, e.g., Kirk v. Carter, 202 Va. 335, 337, 117 S.E.2d 135, 137 (1960) (requiring a three-judge court to hear a case which it had previously dismissed); Richardson v. Farrar, 88 Va. 760, 770, 15 S.E. 117, 121 (1892) (directing the circuit court to reinstate the complaint and hear the case on its merits).

While I disagree with the majority's application today of the principle that mandamus does not lie to undo an act already done, if the majority is correct in refusing to issue a writ of mandamus in this case, then we should not have

35

issued the writ in In re: Horan. This is so because the issuance of that writ had the incidental or secondary effect of undoing the order prohibiting the Commonwealth from seeking the death penalty even though the writ itself did not direct the circuit court judge to vacate or suspend its pre-trial order.[4] In sum, I find no meaningful difference between the case before us and In re: Horan, as well as Wilder, that explains or justifies the majority's decision today.

The holdings in In re: Horan and Wilder are not the only instances in which this Court's issuance of a writ of mandamus had the incidental effect of undoing an act already done. In Town of Front Royal v. Front Royal & Warren County Industrial Park Corporation, 248 Va. 581, 449 S.E.2d 794 (1994), we considered "whether mandamus [was] a proper remedy in an action to compel a municipality to comply with terms for provision of sewer services in a decree previously entered by

---

[4] The majority states, "this Court did not consider or discuss in In re: Horan whether the circuit court's order that prohibited the Commonwealth from seeking the death penalty was an act performed by the circuit court which could not be undone." Contrary to the majority's statement, this Court did consider that issue. The respondent in In re: Horan specifically argued that mandamus did not lie because it would undo the pre-trial order prohibiting the Commonwealth from seeking the death penalty. See Memorandum Submitted by the Honorable Leslie M. Alden in Opposition to "Emergency" Petitions for Writs of Mandamus and Prohibition, and in Support of Her Motion to Dismiss Those Petitions at 10-11, In re: Horan, 271 Va. 258, 634 S.E.2d 675 (2006) (Record Nos. 060023 and 060024).

an annexation court." Id. at 582, 449 S.E.2d at 795. The trial court had issued a writ of mandamus requiring the Town "to plan and construct sewer collectors to each of" several lots of real estate owned by the petitioner. Id. at 584, 449 S.E.2d at 796. On appeal, the Town argued, among other things, that mandamus was not an appropriate remedy because the petitioner was "attempting to use mandamus as a means to revise or correct actions already taken by" the Town's governing body. Id. at 586, 449 S.E.2d at 797. The Town claimed the act already done was its denial of the petitioner's formal application for sewer service. Id.

In rejecting that argument, this Court stated:

Here, . . . the Town is required, by the 1978 court
decree, to perform a prospective non-discretionary
act. The trial court's order issuing the writ of
mandamus compels the Town to comply with that
decree. We also observe, as the trial court found,
that [the petitioner] has met each requirement
necessary for the issuance of the writ.

Id. at 587, 449 S.E.2d at 798. Despite the fact that issuing the writ of mandamus meant the Town had to reverse its rejection of the petitioner's application for sewer service, this Court, nevertheless, affirmed the trial court's judgment. Id. The petitioner had a clear right to the relief sought in its petition for a writ of mandamus, the annexation court's 1978 decree imposed a ministerial duty on the Town to

37

construct sewer lines to the petitioner's individual lots, and the petitioner had no adequate remedy at law.  Id.

In my view, the same rationale applies in the case before us.  The Commonwealth has a clear right to have the Circuit Court conduct the hearing to determine whether Atkins is mentally retarded.  This Court's mandates imposed a ministerial duty on the part of the Circuit Court to conduct that hearing.  And, the Commonwealth has no adequate remedy at law.

The decisions in In re: Horan and Town of Front Royal are not anomalies in our jurisprudence.  In numerous other decisions by this Court, the issuance of a writ of mandamus had the incidental effect of undoing an act already done although the writ itself did not directly compel such action.  See, e.g., Howell v. Catterall, 212 Va. 525, 186 S.E.2d 28 (1972) (issuing writ of mandamus compelling the State Corporation Commission to grant petitioner a continuance, thereby effectively undoing the Commission's order denying petitioner a continuance); Planning Comm'n v. Berman, 211 Va. 774, 180 S.E.2d 670 (1971) (affirming issuance of writ of mandamus to compel approval of site plan and issuance of building permits, thereby undoing a planning commission's previous disapproval of the site plan); Davis v. Sexton, 211 Va. 410, 177 S.E.2d 524 (1970) (issuing writ of mandamus

directing circuit court to allow a judge of a court not of record to practice criminal law in the circuit court and to represent a criminal defendant in a case pending before that court, thereby effectively nullifying the circuit court's order prohibiting the judge from practicing criminal law in that court); Peery v. Board of Funeral Directors, 203 Va. 161, 123 S.E.2d 94 (1961) (issuing mandamus to compel the Virginia Board of Funeral Directors and Embalmers to issue petitioner a license as a funeral director, thereby undoing the Board's previous denial of the license); Kirk, 202 Va. 335, 117 S.E.2d 135 (issuing mandamus to compel a three-judge court to hear and determine an election contest instituted by petitioners, thereby nullifying the court's order dismissing the election contest); McKinney v. Peers, 91 Va. 684, 22 S.E. 506 (1895) (petitioner, along with two other individuals, had received the requisite number of votes to be elected justices of the peace; the election commissioners and clerk met to review the results of the election, threw out the vote cast at a certain precinct, ascertained that three different individuals had been duly elected, and issued certificates of election to those individuals; this Court issued mandamus to compel the clerk to issue to the petitioner a certificate of his election, thereby nullifying the previously issued certificates of election); Richardson, 88 Va. 760, 15 S.E. 117

(issuing mandamus to compel county court judge to reinstate a complaint, which had been dismissed, and to proceed to hear and determine the case upon its merits); Town of Danville v. Blackwell, 80 Va. 38, 42 (1885) (issuing mandamus to the corporation court of Danville to perform its absolute duty to remove a case to the circuit court, thereby undoing corporation court's order refusing to remove the case); Kent, Paine & Co. v. Dickinson, 66 Va. (25 Gratt.) 817 (1875) (issuing mandamus to compel a circuit court judge to hear and finally dispose of an appeal that had been previously dismissed by the said judge); Cowan v. Fulton, 64 Va. (23 Gratt.) 579 (1873) (same); Smith v. Dyer, 5 Va. (1 Call.) 562 (1799) (affirming a district court's judgment issuing a writ of mandamus compelling a county court to reinstate a clerk ousted from his office by the illegal appointment of another person, thereby undoing not only the removal of the clerk but also the appointment of a new clerk).

Moreover, there are instances in which we have actually issued a writ of mandamus that directly compelled an act already done to be undone. See, e.g., In re: Morrissey, 246 Va. 333, 334, 433 S.E.2d 918, 919 (1993) (issuing writ of mandamus to reinstate a public officeholder wrongly deprived of his office and "requiring that the court's [order removing the public officer] be annulled"); In re: Commonwealth's

40

Attorney for Chesterfield County, 229 Va. 159, 163, 326 S.E.2d 695, 698 (1985) ("the writ of mandamus will be granted directing the trial judge to forthwith vacate his judgment of September 25, 1984, and to sentence [the defendant] according to the provision of Code § 18.2-53.1").

In contrast to these cases, the decision in Morrissette v. McGinniss, 246 Va. 378, 436 S.E.2d 433 (1993), provides an example of when this Court affirmed a trial court's judgment denying a writ of mandamus because the writ, if issued, would have had the effect of undoing an act already done. There, the petition for mandamus asked the trial court to order a county's general registrar to amend and correct a certification in order to show that the required number of voters had indeed signed petitions for a referendum. Id. at 381, 436 S.E.2d at 435. The general registrar had already certified that the petitions did not satisfy the requirements for a referendum. Id. at 380, 435 S.E.2d at 434. The petition for mandamus also asked the trial court to order the county board of supervisors to hold a referendum on the subject at issue despite the fact that the county board had already refused to do so and had enacted an ordinance creating a county service authority for the purpose of constructing and operating facilities for "a water supply, treatment, and distribution system, . . . a sewage collection, disposal and

treatment system, and . . . a garbage and refuse collection and disposal system."[5]  Id. at 380, 436 S.E.2d at 434.

In affirming the trial court's judgment refusing to issue a writ of mandamus, we stated:

> [The petitioner] seeks to use mandamus to revise or correct the allegedly erroneous action of the [general registrar], the [county board of supervisors], and the State Corporation Commission. He charges the [general registrar] with failing to properly certify the validity of the petitions; he charges the [county board] with unlawfully refusing to call for a referendum.  Those acts had been performed at the time the mandamus petition was filed and could not be undone by mandamus.  [The petitioner] should have taken prompt action immediately after the public hearing to seek judicial review of those allegedly erroneous actions.

> Id. at 382, 436 S.E.2d at 435.

Unfortunately, these cases demonstrate that our jurisprudence is less than consistent in terms of when we use the principle that mandamus does not lie to undo an act already done as the basis for refusing to issue a writ of mandamus.  The majority describes this principle as a "fundamental principle of jurisprudence."  Whether it is or not, even the cases upon which the majority relies do nothing to explain or resolve the inconsistent results I find in our jurisprudence.

---

[5] The State Corporation Commission had also issued a certificate of incorporation for the county service authority. Morrissette, 246 Va. at 380, 436 S.E.2d at 434.

42

In *Thurston v. Hudgins*, 93 Va. 780, 20 S.E. 966 (1895), the petitioner sought a writ of mandamus against an oyster inspector to compel him to give notice to two other individuals to remove their stakes from a certain oyster ground, and if the individuals failed to do so, to require the oyster inspector to remove the stakes. *Id.* at 781, 20 S.E. at 967. The trial court refused to issue the writ. *Id.*

On appeal, the decision turned "upon the question whether the duties imposed upon an oyster inspector by the provisions of the Code [were] purely ministerial in their nature, or [were] duties necessarily calling for the exercise of judgment and discretion in their performance." *Id.* at 783, 20 S.E. at 967. This Court concluded that an oyster inspector's statutory duties were "*quasi* judicial in their nature, requiring the exercise of judgment and discretion in their performance," and mandamus was therefore not appropriate. *Id.* at 784, 20 S.E. at 968.

We also recognized that the oyster inspector had already exercised his discretion in assigning a certain 20 acres to two individuals for the purpose of planting oysters or shells. Thus, "[t]he object of the petitioner . . . was not only to compel the inspector to undo what he had done, but to compel him to do a specific act without reference to the opinion of the inspector upon the subject." *Id.* We then stated, "It is

43

also well settled that mandamus does not lie to compel an officer to undo what he has done in the exercise of his judgment and discretion, and to do what he had already determined ought not to be done, as is sought in this case." Id. In other words, mandamus did not lie because the act to be compelled was discretionary. See Harrison v. Barksdale, 127 Va. 180, 189-90, 102 S.E. 789, 792 (1920) (explaining that in Thurston, the action of the officer that had been done was in the exercise of judgment and discretion and for that reason mandamus did not lie "to undo the action, and not merely because the action was a past event").

Next, in Board of Supervisors v. Combs, 160 Va. 487, 169 S.E. 589 (1933), the Board of Supervisors of Amherst County sought a writ of mandamus directing the state comptroller and the Board of Supervisors of Campbell County "in the future to distribute the tax derived from motor vehicle fuel, in accordance with the said acts of 1930, page 42, ch. 45; that Amherst [C]ounty be given credit for one-half of the population of the [C]ity of Lynchburg as provided for in said acts, and in keeping with all other provisions thereof, and that said petitionees pay to Amherst [C]ounty all back pay or arrears in said tax, to which it is entitled had the law been so observed as it should have been, and deduct or credit the future payments to Campbell [C]ounty until the fund is

equalized or adjusted upon a legal basis." Id. at 492, 169 S.E. at 591. We held that mandamus did not lie against the Board of Supervisors of Campbell County because the statute in question gave no authority to county boards of supervisors to distribute the proceeds at issue. Id. at 493, 169 S.E. at 591.

As to the state comptroller, we noted not only that he had already distributed all the revenues apportionable among the counties under the 1930 act but also that the authority vested in the state comptroller had been withdrawn by subsequent legislation that became effective prior to this Court's hearing the petition for mandamus. Id. at 494-95, 169 S.E. at 591-92. We concluded that mandamus did not lie against the state comptroller because there was no longer a fund from which he could make future distributions and because the authority vested in the state comptroller had been withdrawn. Id. at 495, 169 S.E. at 592. Thus, we held that "[i]n view of the . . . facts and the change in the law relating to the subject, it is obvious that the writ of mandamus prayed for by the petitioner would, if awarded, be unavailing and wholly nugatory." Id. at 496, 169 S.E. at 592. "[T]o warrant the court in granting the writ against a public officer such a state of facts must be presented as to show that the relator has a clear right to the performance of the

thing demanded, and that a corresponding duty rests upon the officer to perform that particular thing." Id. (quoting Tyler v. Taylor, 70 Va. (29 Gratt.) 765, 767 (1878)).

As to the petitioner's request that the state comptroller and Campbell County be directed to pay Amherst County "all back pay or arrears in said tax to which it is entitled had the law . . . been observed as it should have been," id. at 497-98, 169 S.E. at 593, we likewise concluded that mandamus did not lie. To issue mandamus as the petitioner requested would have specifically directed the state comptroller to undo his distribution of the tax revenues derived from motor vehicle fuel. We stated:

> A mandamus is always granted to compel the performance of some duty which has not been done . . . . It is not granted to undo an act already done. The court will not allow the validity of the act to be tried in this way. We grant it, said Lord Campbell, when that has not been done which a statute orders to be done; but not for the purpose of undoing what has been done.

Id. at 498, 169 S.E. at 593 (citing Harrison, 127 Va. 180, 102 S.E. 789 (internal quotation marks omitted)).

The quote from Lord Campbell relied upon in Combs comes from the case of Ex parte Nash, 15 Q.B. 92 (1850). There, the petitioner requested a writ of mandamus to compel a railway company to take its seal off the register of shareholders. Id. at 92. Prior to ruling, Lord Campbell stated to counsel

46

for the petitioner, "It seems to me quite new to try the validity of an act by a mandamus to undo it."  Id. at 95. Lord Campbell then ruled:

> We grant [mandamus] when that has not been done
> which a statute orders to be done; but not for the
> purpose of undoing what has been done.  We may, upon
> an application for a mandamus, entertain the
> question whether a corporation, not having affixed
> its seal, be bound to do so; but not the question
> whether, when they have affixed it, they have been
> right in doing so.  I cannot give countenance to the
> practice of trying in this form questions whether an
> act professedly done in pursuance of a statute was
> really justified by the statute.

Id. at 95-96; see also In re: Horan, 271 Va. at 264, 634 S.E.2d at 679; 2 T.C. Spelling, A Treatise on Injunctions and Extraordinary Remedies, § 1436, at 1256-57 (1901) ("Mandamus does not lie to compel a party holding an official position to reverse a decision already rendered in the exercise of discretionary powers.  In other words, what has been already done, however erroneously, cannot be undone by this remedy.").[6]

---

[6] This treatise divides the issue of mandamus into several sections, two of those being "To Inferior Courts and Judicial Officers" and "General Principles Governing Mandamus to Public Officers."  Spelling, at xi-xii.  Interestingly, the treatise discusses the principle that mandamus does not lie to undo an act already done in the section concerning public officers but does not mention it as an applicable rule in the section pertaining to inferior courts.  Thus, I maintain the principle advanced by the majority in this case is not relevant when deciding whether to issue a mandamus to an inferior court as opposed to a public official.

Continuing, in Richlands Medical Association, the State Health Commissioner requested the trial court to issue a writ of mandamus ordering a hearing examiner "to adhere to the law, to interpret properly the . . . Certificate of Public Need Law, to restrict his review to the function specified in [Code] § 32.1-97 . . ., to abandon his erroneous construction of the law, and to affirm the . . . Commissioner's original denial of the application" for a certificate of need to construct a new hospital filed by Richlands Medical Association.  230 Va. at 386, 337 S.E.2d at 739.  This Court reversed the trial court's judgment issuing the writ "[b]ecause the hearing examiner's duties required the exercise of judgment and discretion."  Id. at 388, 377 S.E.2d at 740. Alternatively, we also noted that mandamus, if issued, would "revise the hearing examiner's completed acts."  Id.

The case of In re: Commonwealth's Attorney, 265 Va. 313, 315, 576 S.E.2d 458, 460 (2003), involved two petitions for writs of mandamus requesting this Court, among other things, to direct a circuit court judge to vacate particular orders and proceed to enter judgments of guilt.  We did not issue mandamus because the petitioner was asking us to control a judge's exercise of judicial discretion.  Id. at 319, 576 S.E.2d at 462.  In a footnote, we also stated that the actions of the circuit court judge at which the requested mandamus was

directed had already taken place.  Id. at 319 n.4, 576 S.E.2d at 462 n.4.

Finally, in contrast to those four cases, we were confronted in Harrison with the question: "If the position of the petitioners were well taken, and it was the duty of the respondent to have entered a contrary order from that which he did enter, would mandamus lie to compel him to do so?"  127 Va. at 187, 102 S.E. at 791.  We answered the question in the affirmative and stated:

> It is true that mandamus will not lie unless the respondent is in possession of the authority to perform the act sought at the time the writ is asked to be issued; but the mere fact that he has done something contrary to his duty does not of itself deprive the respondent of the authority later to reverse such action and perform his duty aright.

Id. at 189, 102 S.E. at 792.

Despite the divergent application of the principle that mandamus does not lie to undo an act already done, I do, however, find consistency in the cases in which we have considered whether to issue a writ of mandamus to an inferior court.  In In re: Horan, In re: Morrissey, In re: Commonwealth's Attorney for Chesterfield County, Davis, Kirk, Richardson, Wilder, Blackwell, Kent, Cowan, and Smith, we issued (or affirmed the issuance of) writs of mandamus that either directly or implicitly undid an act that had been done. In other words, we did not refuse to issue mandamus because it

49

would undo an act already done by the inferior court.[7]  I do recognize that in the case of In re: Commonwealth's Attorney we stated in a footnote that mandamus, if issued, would undo an act already done.  265 Va. at 319 n.4, 576 S.E.2d at 462 n.4.  That observation did not form the basis of the Court's decision.  Thus, it appears that this Court has not, with few exceptions until today, applied this principle when considering whether a writ of mandamus should issue to an inferior court.  See supra note 6.

In sum, I conclude that the jurisprudence of this Court does not support the majority's refusal to issue a writ of mandamus directing the Circuit Court to conduct a hearing to determine whether Atkins is mentally retarded.  The majority applies the principle that mandamus does not lie to undo an act already done as though this Court had never deviated from a constant use of the principle to refuse to issue mandamus anytime doing so would either directly or implicitly undo an act already done.  But, as I have demonstrated, we have not been consistent, except with regard to issuing mandamus to

---

[7] The majority concludes these cases are not relevant because they did not involve final judgments in criminal cases.  For purposes of deciding whether mandamus should issue, this Court has never before distinguished between final judgments in civil cases and final judgments in criminal cases.  Yet, the majority does so today without explanation as to why such a distinction is appropriate.

inferior courts.  The majority merely cites the principle and concludes that mandamus does not lie in the case before us but ignores the rule of law embodied in our mandates.[8]

There can be no question, and the majority does not suggest otherwise, that our mandates to the Circuit Court left no room for the exercise of discretion as to whether to conduct the mental retardation hearing.  We directed the Circuit Court to do so, but it refused to obey our mandates.  But see Strayer, 83 Va. at 717, 3 S.E. at 374 (holding the circuit court "must obey" this Court's mandate).  We have held that "[mandamus] may be appropriately used and is often used to compel courts to act where they refuse to act and ought to act."  Page, 71 Va. (30 Gratt.) at 418; accord In re: Horan, 271 Va. at 259, 634 S.E.2d at 676.

Unlike the majority, I cannot sanction the Circuit Court's refusal to perform its duty to "implement both the letter and spirit" of our mandates.  Bell, 5 F.3d at 66.  As we said many years ago, "mandamus is always granted to compel

_____

[8] I further note, as explained more thoroughly below in discussing the majority's refusal to issue a writ of prohibition, that the Circuit Court exceeded its jurisdiction when it entered the order setting aside Atkins' death sentence, thus rendering the order void ab initio. Consequently, the issuance of a writ of mandamus would not undo an act already done because the order, being void ab initio, was a legal nullity and in all practical effect, never done in the first place.

the performance of some duty which has not been done." Combs, 160 Va. at 498, 169 S.E. at 593. I also note that, by issuing a writ of mandamus compelling the Circuit Court to conduct the mental retardation hearing, we would not be reviewing the merits of its decision that the Commonwealth withheld exculpatory evidence.[9] See id. For these reasons, I would issue a writ of mandamus directing the Circuit Court of York County to conduct a hearing to determine whether Atkins is mentally retarded.

---

[9] I express no opinion as to whether the Circuit Court was correct in finding that the Commonwealth withheld exculpatory evidence in violation of Brady and whether setting aside Atkins' sentence of death was an appropriate sanction. The merits of the Circuit Court's decision on that issue are not before us in these petitions for mandamus and prohibition. Nevertheless, the majority apparently decides the Circuit Court was correct since the majority concludes that issuing a writ of mandamus is not appropriate because it "would serve to ignore the reality of the present case that justice was not served by the Commonwealth's deliberate use of 'coached' testimony."

I do emphasize, however, that alleged Brady violations are routinely the subject of petitions for writs of habeas corpus. See, e.g., Elliot v. Warden, 274 Va. 598, 598-99, 652 S.E.2d 465, 471-72 (2007); Muhammad v. Warden, 274 Va. 3, 3-13, 646 S.E.2d 182, 186-91 (2007); Lovitt v. Warden, 266 Va. 216, 223-24, 243-47, 585 S.E.2d 801, 805, 817-19 (2003). Given the procedural status of Atkins' capital murder case, a petition for a writ of habeas corpus is the appropriate vehicle to address the merits of Atkins' motion alleging Brady violations by the Commonwealth.

### III. PROHIBITION

In addition to the petition for a writ of mandamus, the Commonwealth also filed a petition seeking a writ of prohibition.  The Commonwealth asked that the Circuit Court be prohibited "from enforcing [its] January 24, 2008, pre-trial order . . . reducing the sentence of death imposed by the jury" in Atkins' capital murder case and "from entering any order in [that] case reducing the death sentence without a jury determination of mental retardation."  Because the Circuit Court exceeded its jurisdiction when it entertained Atkins's Brady motion and then entered the order setting aside his death sentence, thereby rendering the order void ab initio, I would issue the writ of prohibition as prayed for by the Commonwealth.

"The office of a writ of prohibition is . . . to prevent the exercise of jurisdiction of the court by the judge to whom it is directed, either where he has no jurisdiction at all, or is exceeding his jurisdiction."  Rollins v. Bazile, 205 Va. 613, 616, 139 S.E.2d 114, 117 (1964); see also Burch v. Hardwicke, 64 Va. (23 Gratt.) 51, 59 (1873) ("A [writ of] prohibition is a proper remedy to restrain an inferior court from acting in a matter of which it has no jurisdiction, or from exceeding the bounds of its jurisdiction.").  "Although jurisdiction of the person, or of the subject matter, may have

53

once existed, yet, if for any cause it has been lost, the writ [of prohibition] may issue." Rollins, 205 Va. at 616, 139 S.E.2d at 117. The writ is used "for the furtherance of justice, and to secure order and regularity in judicial proceedings, where none of the ordinary remedies provided by law are applicable." Supervisors of Bedford v. Wingfield, 68 Va. (27 Gratt.) 329, 333 (1876).

Although this Court has never addressed the issue, various other courts have found that a writ of prohibition is a proper remedy to compel an inferior court to comply with a superior court's mandates. See, e.g., Harbel Oil Co. v. Superior Court, 345 P.2d 427, 429 (Ariz. 1959) (recognizing that a writ of prohibition is the appropriate remedy when a trial court refuses to obey the mandate of an appellate court "since the trial court's jurisdiction on remand is delimited by the terms of the mandate"); Arkansas Baptist Coll. v. Dodge, 74 S.W.2d 645, 646 (Ark. 1934) (making temporary writ of prohibition "perpetual" because chancery court failed to follow appellate court's mandate); Butler v. Superior Court, 128 Cal. Rptr. 2d 403, 405 (Cal. Ct. App. 2002) ("When an appellate court's reversal is accompanied by directions requiring specific proceedings on remand, those directions are binding on the trial court and must be followed. Any material variance from the directions is unauthorized and void" and

"failure to follow appellate directions can be challenged by an immediate petition for writ of prohibition."); Gibbs v. Circuit Court, 191 So. 699, 700 (Fla. 1939) ("The law is settled in this State that when a cause has been appealed and judgment rendered by the appellate court, interference therewith on the part of the lower court by any proceeding other than such as is directed by the appellate court will be prohibited."); Smith v. O'Connor, 646 N.E.2d 1115, 1117 (Ohio 1995) ("A writ of prohibition is an appropriate remedy to prevent a lower court from proceeding contrary to the mandate of a superior court."); Cherokee Water Co. v. Ross, 698 S.W.2d 363, 366 (Tex. 1985) ("When the opinion and mandate of [an appellate court] prohibit relitigation of some issues on remand, or direct that only some expressly severed issues or causes may still be litigated, and the parties and trial court attempt relitigation beyond that which was expressly permitted, a writ of prohibition will issue to prohibit relitigation." (citing City of Orange v. Clark, 627 S.W.2d 146 (Tex. 1982))); Frazier & Oxley, L.C. v. Cummings, 591 S.E.2d 728, 739 (W. Va. 2003) (holding that "when a circuit court fails or refuses to obey or give effect to the mandate of [an appellate court], misconstrues it, or acts beyond its province in carrying it out, the writ of prohibition is an appropriate means of enforcing compliance with the mandate").

In my view, this Court should follow this accepted principle of law and hold that a writ of prohibition is the proper remedy to enforce the Circuit Court's compliance with this Court's mandates.  Not only do accepted principles of American law support this outcome, but issuing a writ of prohibition under the circumstances of this case is also fully supported by this Court's jurisprudence.

A writ of prohibition is to prevent the exercise of jurisdiction when the judge to whom it is directed either has no jurisdiction or is exceeding his jurisdiction.  Rollins, 205 Va. at 616, 139 S.E.2d at 117.  Thus, the dispositive question for purposes of issuing a writ of prohibition in this case is whether, upon remand from this Court, the Circuit Court had jurisdiction to conduct any proceedings other than the mental retardation hearing.  I conclude that the Circuit Court did not because its jurisdiction at that time was circumscribed by the provisions of Code § 8.01-654.2 in conjunction with this Court's two separate mandates.

Article VI, Section 1 of the Constitution of Virginia grants to the General Assembly, subject to certain limitations set forth in that section, "the power to determine the original and appellate jurisdiction of the courts of the Commonwealth."  Pursuant to that constitutional provision, the General Assembly statutorily conferred upon circuit courts

original subject matter jurisdiction for all indictments for felonies. Code § 17.1-513; Porter v. Commonwealth, 276 Va. 203, 229, 661 S.E.2d 415, 427 (2008); see also Nelson v. Warden, 262 Va. 276, 281, 552 S.E.2d 73, 75 (2001) (subject matter jurisdiction is granted through a constitution or statute). Subject matter jurisdiction gives a court the power to adjudicate a class of cases or controversies. Jenkins v. Director, Va. Ctr. for Behav. Rehab., 271 Va. 4, 13, 624 S.E.2d 453, 458 (2006). A circuit court, however, loses jurisdiction over a felony case after the expiration of 21 days and may not thereafter modify, vacate, or suspend its final judgment, Rule 1:1; but, if a person is sentenced for a felony to the Department of Corrections, a circuit court "may, at any time before the person is transferred to the Department, suspend or otherwise modify the unserved portion of such a sentence." Code § 19.2-303; Commonwealth v. Neely, 271 Va. 1, 2-3, 624 S.E.2d 657, 657 (2006).[10] See also Virginia Dep't of Corrs. v. Crowley, 227 Va. 254, 264, 316 S.E.2d 439, 444 (1984) (holding that orders releasing certain

---

[10] Rule 1:1 does not prevent a circuit court's entering an order staying an execution date because such an order does not modify, vacate, or suspend a final judgment. Davidson v. Commonwealth, 246 Va. 168, 171, 432 S.E.2d 178, 179 (1993). Under Rule 1:1, a circuit court may also "postpone execution of the sentence in order to give the accused an opportunity to apply for a writ of error and supersedeas."

defendants and suspending their sentences entered after the 21-day limitation in Rule 1:1 expired and after the defendants were transferred to the penitentiary were void for lack of jurisdiction).

In the case before us, there is no question that, prior to this Court's remand for the sole purpose of conducting the mental retardation hearing, the time limitations in both Rule 1:1 and Code § 19.2-303 had expired in Atkins' capital murder case and the Circuit Court no longer had <u>any</u> jurisdiction over the case. The General Assembly, however, enacted the previously mentioned emergency legislation in order to provide a mechanism for persons, such as Atkins, whose death sentences had become final in a circuit court before April 29, 2003 to present claims of mental retardation to this Court. Code § 8.01-654.2. In relevant part, Code § 8.01-654.2 states:

> Notwithstanding any other provision of law, any person under sentence of death <u>whose sentence became final in the circuit court</u> before April 29, 2003, and who desires to have a claim of his mental retardation presented to the Supreme Court, shall do so by one of the following methods: (i) . . . if his direct appeal is pending in the Supreme Court, he shall file a supplemental assignment of error and brief containing his claim of mental retardation . . . . The Supreme Court shall consider a claim raised under this section and if it determines that the claim is not frivolous, it shall remand the claim to the circuit court for a determination of mental retardation; otherwise the Supreme Court shall dismiss the petition. The provisions of §§ 19.2-264.3:1.1 and 19.2-264.3:1.2 shall govern a determination of mental retardation made pursuant to

> this section. If the claim is before the Supreme
> Court on direct appeal and is remanded to the
> circuit court and the case wherein the sentence of
> death was imposed was tried by a jury, the circuit
> court shall empanel a new jury for the sole purpose
> of making a determination of mental retardation.

(Emphases added.). In accordance with the provisions of Code § 8.01-654.2, our remand to the Circuit Court was necessarily restricted to "the sole purpose of making a determination of mental retardation."[11] Atkins, 266 Va. at 80, 581 S.E.2d at 517 (quoting Code § 8.01-654.2).

Thus, but for the enactment of Code § 8.01-654.2 and this Court's remand, the Circuit Court would not have had the power to adjudicate whether Atkins is mentally retarded. Until the enactment of this statute and the other emergency legislation, see Code §§ 19.2-264.3:1.1, 19.2-264.3:1.2, and 19.2-264.3:3, there was no procedure in the Commonwealth for a defendant

---

[11] Remands by appellate courts are often described as general or limited. Frazier & Oxley, 591 S.E.2d at 735. A general remand means "a cause is broadly remanded for a new trial [and] all of the issues are opened anew as if there had been no trial." Overton Constr. Co. v. First State Bank, 688 S.W.2d 268, 269 (Ark. 1985). In contrast, a limited remand "prohibit[s] relitigation of some issues on remand, or direct[s] that only some expressly severed issues or causes may still be litigated." Cherokee Water Co. v. Ross, 698 S.W.2d 363, 366 (Tex. 1985). "When the further proceedings are specified in the mandate, the [trial] court is limited to holding such as are directed." Hicks v. Gates Rubber Co., 928 F.2d 966, 971 (10th Cir. 1991). Our mandate to the Circuit Court was a limited remand because it specified the further proceeding to be conducted, i.e., the mental retardation hearing.

convicted of capital murder to obtain a determination of mental retardation by either a jury or a trial court sitting as the factfinder. However, in the new but narrow class of cases brought into existence because of the decision of the United States Supreme Court in Atkins III, in which the death sentence in a capital murder case became final in a circuit court before April 29, 2003, and this Court has determined that a claim of mental retardation is not frivolous, the General Assembly conferred limited jurisdiction, not plenary jurisdiction over an entire capital murder case, to a circuit court to adjudicate whether the defendant is mentally retarded. Given the limited jurisdiction in this particular class of cases, the Circuit Court had the power to adjudicate only the issue as to whether Atkins is mentally retarded.[12] In

---

[12] The majority states, and I agree, that the Commonwealth's Attorney asked the Circuit Court to rule on Atkins' motion to disqualify the Commonwealth's Attorney because he allegedly procured perjured testimony in Atkins' original capital murder trial. Certainly, whether the Commonwealth's Attorney should be disqualified from participating in the hearing to determine whether Atkins is mentally retarded is an issue that would be relevant and necessary to that proceeding, as would a motion to prohibit the introduction of certain evidence.

The request by the Commonwealth's Attorney asking the Circuit Court to rule on Atkins' motion was not inconsistent with the assertion that the Circuit Court lacked the power to adjudicate other legal issues that were not relevant to the mental retardation hearing. Nevertheless, even if the majority is correct that the Commonwealth's Attorney approbated and reprobated, the jurisdiction to adjudicate any subject matter other than the issue of Atkins' mental

other words, the Circuit Court exceeded the jurisdiction conferred by Code § 8.01-654.2 when it adjudicated Atkins' Brady motion and set aside his sentence of death.

The Circuit Court itself questioned whether it had jurisdiction to adjudicate Atkins' motion alleging Brady violations when it certified an interlocutory appeal pursuant to Code § 8.01-670.1, asking this Court whether it could hear the motion and order an appropriate remedy.  Although we dismissed the appeal because Code § 8.01-670.1 is inapplicable in criminal cases, this Court's mandate upon remand directed the Circuit Court to continue with the case, expressly "confined to the terms of [our previous mandate] remanding this case for a jury determination of whether Atkins is mentally retarded."

Since the Circuit Court exceeded its jurisdiction by adjudicating Atkins' Brady motion when Atkins' capital murder case was remanded pursuant to the limited jurisdiction conferred by Code § 8.01-654.2, the order setting aside Atkins' sentence of death is void and of no force and effect. See Crowley, 227 Va. at 264, 316 S.E.2d at 444.  We have held in numerous cases that any action taken by a court after it

retardation cannot be conferred on the Circuit Court "by consent of the parties, waiver or estoppel."  Lucas v. Biller, 204 Va. 309, 313, 130 S.E.2d 582, 585 (1963); accord Wagner v.

loses jurisdiction is void ab initio and a complete nullity; an order entered under such circumstances has no force and effect.  See, e.g., Morgan v. Russrand Triangle Assocs., L.L.C., 270 Va. 21, 26-27, 613 S.E.2d 589, 591-92 (2005); Safrin v. Travaini Pumps USA, Inc., 269 Va. 412, 418, 611 S.E.2d 352, 355 (2005); James v. James, 263 Va. 474, 483, 562 S.E.2d 133, 138 (2002); Super Fresh Food Mkts. v. Ruffin, 263 Va. 555, 563-64, 561 S.E.2d 734, 739 (2002); Singh v. Mooney, 261 Va. 48, 54, 541 S.E.2d 549, 552 (2001); Davis v. Mullins, 251 Va. 141, 150, 466 S.E.2d 90, 94-95 (1996); Parrish v. Jessee, 250 Va. 514, 521, 464 S.E.2d 141, 145 (1995); Ein v. Commonwealth, 246 Va. 396, 400-01, 436 S.E.2d 610, 613 (1993); Dixon v. Pugh, 244 Va. 539, 543, 423 S.E.2d 169, 171 (1992); School Bd. of the City of Lynchburg v. Caudill Rowlett Scott, Inc., 237 Va. 550, 556, 379 S.E.2d 319, 323 (1989); Prohm v. Anderson, 220 Va. 74, 77, 255 S.E.2d 491, 492-93 (1979). Further, it is well-settled that a judgment that is void ab initio "may be 'impeached directly or collaterally by all persons, anywhere, at any time, or in any manner.' "  Singh, 261 Va. at 52, 541 S.E.2d at 551 (quoting Barnes v. American Fertilizer Co., 144 Va. 692, 705, 130 S.E. 902, 906 (1925) (emphasis added)); see also Hicks v. Mellis, 275 Va. 213, 219,

---

Shird, 257 Va. 584, 588, 514 S.E.2d 613, 615 (1999); Morrison v. Bestler, 239 Va. 166, 169-70, 387 S.E.2d 753, 755 (1990).

657 S.E.2d 142, 145 (2008); Collins v. Shepherd, 274 Va. 390, 402, 649 S.E.2d 672, 678 (2007).

This Court's decision in State Farm Mutual Automobile Insurance Company v. Remley, 270 Va. 209, 618 S.E.2d 316 (2005), directly supports my conclusion that the Circuit Court exceeded its jurisdiction when it decided any issue other than whether Atkins is mentally retarded. In that case, the plaintiff, Christine B. Remley, obtained a default judgment against the defendant, Craig Griffin. Id. at 213, 618 S.E.2d at 317. The circuit court, however, erroneously stated in its default judgment order "that judgment be and hereby is granted to the plaintiff, Craig Griffin, and against the defendant." Id.

Relying on Code § 8.01-428,[13] Remley's uninsured/underinsured motorist carrier filed a motion to set aside the default judgment; however, at the time it filed the motion, both the 21-day period provided in Rule 1:1 and the 30-day period to file an appeal had expired. Id. at 213, 618 S.E.2d at 318. The circuit court denied the motion but corrected the "scrivener's error" in its default judgment order so as to reflect that judgment was granted to Remley,

_____

[13] The provisions of Code § 8.01-428 permit a court to set aside default judgments for specific reasons, such as fraud upon the court, and correct clerical mistakes after the 21-day limitation in Rule 1:1 has expired.

the correct plaintiff.  Id. at 215, 618 S.E.2d at 319.  The circuit court concluded that "its act of entering the corrected judgment order did not extend the court's jurisdiction to either grant the defendants leave to file a late grounds of defense or their motion to set aside the default judgment on grounds other than those contained in Code § 8.01-428."  Id.

This Court affirmed the circuit court's judgment denying the motion to set aside the default judgment.  We gave these reasons for our decision:

> We disagree with [the insurer's] contention that the circuit court reacquired jurisdiction over all issues relating to plaintiff's motion for judgment when the circuit court entered the order of correction . . . .  We hold that when a circuit court exercises jurisdiction pursuant to Code § 8.01-428, such jurisdiction is limited to the specific subjects set forth in paragraphs (A), (B), (C), or (D) of Code § 8.01-428.  Once a court obtains jurisdiction pursuant to Code § 8.01-428, the court is not authorized to consider any issues that are not specifically set forth in this statute.

Id. at 221, 618 S.E.2d at 322 (emphasis added).

Similarly, once the Circuit Court at issue reacquired jurisdiction of Atkins' capital murder case under Code § 8.01-654.2, it was not authorized to consider any issue not specifically set forth in that statute.  Just as Code § 8.01-428 is a limited exception to the conclusive effect of a final judgment, so is Code § 8.01-654.2.  See Charles v.

64

<u>Commonwealth</u>, 270 Va. 14, 17 n.*, 613 S.E.2d 432, 433 n.*
(2005) ("Unless otherwise provided by statute, <u>see</u> <u>e.g.</u>, Code
§ 8.01-428, Rule 1:1 prohibits the modification of a final
order more than 21 days after the date of entry."); <u>see</u> <u>also</u>
<u>McEwen Lumber Co. v. Lipscomb Bros. Lumber Co.</u>, 234 Va. 243,
244-45, 360 S.E.2d 845, 846 (1987).

This Court has affirmed the issuance of a writ of
prohibition to prevent a trial court from granting a new trial
after the expiration of the statutory period during which the
trial court retained jurisdiction to do so.  <u>Burroughs v.
Taylor</u>, 90 Va. 55, 56, 17 S.E. 745, 746 (1893).  This Court
has likewise issued a writ of prohibition to prevent a circuit
court from entertaining motions to reconsider sentencing
orders after the expiration of the 21-day period provided in
Rule 1:1 and after the defendants were transferred to the
Department of Corrections.  <u>In re: Dep't of Corrs.</u>, 222 Va.
454, 466, 281 S.E.2d 857, 864 (1981).  Thus, I conclude that a
writ of prohibition as requested by the Commonwealth should be
issued.

Citing this latter case, the majority, however, holds
that a writ of prohibition does not lie in this case because
it would undo an act already done.  In that case, five co-
defendants were convicted for various drug offenses and
sentenced to terms in the penitentiary.  <u>Id.</u> at 457, 281

65

S.E.2d at 858-59.  All the defendants filed motions to set aside the judgments within 21 days of the sentencing orders. Id. at 457-58, 281 S.E.2d at 859.  The circuit court, within the 21-day period of Rule 1:1, took the motions under advisement, "stating that the defendants had not yet been committed to the penitentiary system [and] that the court was not prepared to rule on the motions at that time."  Id. at 458, 281 S.E.2d at 859.  At some point after the circuit court took the motions under advisement, the defendants were received into the penitentiary system.  Id.

Subsequently, the circuit court, in three separate orders entered on different dates, directed that three of the defendants be released from custody, suspended the remainder of the term of incarceration of each, and placed those three defendants on probation for the balance of their original sentences.  Id.  At the time the orders releasing the three defendants from the penitentiary were entered, they had been incarcerated for periods ranging from three and one-half months to one year.  Id.  The circuit court, however, took no action on the motions filed by the other two defendants.  Id.

The Department of Corrections filed a petition for a writ of prohibition in this Court alleging that the circuit court "did not vacate or suspend the judgments of conviction prior to the expiration of 21 days or delivery of the defendants to

the penitentiary, and therefore it had no jurisdiction to enter the orders suspending the sentences and compelling the release of [the three defendants] and has no jurisdiction now to take any such action as to [the two remaining defendants]." Id. The Department relied primarily on Rule 1:1 and former Code § 53-272, the predecessor to Code § 19.2-303. Id. at 459, 281 S.E.2d at 859.

With regard to the two defendants whose motions the circuit court had yet to decide, this Court held that because the circuit court had not modified, vacated, or suspended the final sentencing orders within 21-days of entry or before those defendants had been transferred to the penitentiary, the circuit court "no longer [had] jurisdiction to act on the [pending] motions to suspend." Id. at 465, 281 S.E.2d at 863. Thus, we "award[ed] a writ prohibiting the trial judge or any other judge of the [circuit] court from entering any orders on the motions to suspend the balance of the sentences of [the two defendants]." Id. at 466, 281 S.E.2d at 864.

With regard to the three defendants who had already been released from the penitentiary, we denied the writ of prohibition, stating, "In each case, the release is an accomplished fact; thus, the time for challenging such

67

releases in a petition for a writ of prohibition has passed."[14]

Id. at 461, 281 S.E.2d at 861.  In reaching that conclusion,

the Court explained the purpose of a writ of prohibition:

> The writ of prohibition, as its name imports,
> is one which commands the person to whom it is
> directed not to do something which, by the
> suggestion of the relator, the court is informed he
> is about to do.  If the thing be already done, it is
> manifest the writ of prohibition cannot undo it, for
> that would require an affirmative act; and the only
> effect of a writ of prohibition is to suspend all
> action, and to prevent any further proceeding in the
> prohibited direction.

---

[14] Subsequently, in Crowley, this Court was called upon to
determine whether the three circuit court orders for which we
had refused to issue a writ of prohibition to prevent their
enforcement, see In re: Dep't of Corrs., 222 Va. at 461, 281
S.E.2d at 861, could be vacated and set aside.  227 Va. at
258, 316 S.E.2d at 441.  Applying Rule 1:1 and the rationale
enunciated in In re: Department of Corrections when this Court
granted the writ of prohibition as to the two defendants whose
motions to suspend had not been ruled upon, we held that

> because the orders releasing the [three defendants]
> and suspending their sentences were entered after
> the 21-day limitation in Rule 1:1 had expired and
> the [three defendants] had been transferred to the
> penitentiary, those orders were void for lack of
> jurisdiction and the [circuit] court erred in
> dismissing the motions to vacate.  Hence, we will
> reverse the several judgments and enter a final
> judgment in each case vacating the void order.  If,
> upon entry of our mandates, the Attorney General,
> acting as attorney for the Commonwealth, for the
> Department of Corrections, and for the warden of the
> institution in which the [three defendants] were
> incarcerated, so elects, he may initiate the process
> required to return the [three defendants] to custody
> to serve the sentences originally imposed.

Id. at 264, 316 S.E.2d at 444.

Id. (quoting United States v. Hoffman, 71 U.S. (4 Wall.) 158, 161-62 (1866)).

It appears that In re: Department of Corrections is the only case in which we have refused to issue a writ of prohibition on the basis that doing so would undo an act already done.[15]  In examining the Court's opinion, I find that the release of the three defendants was the "accomplished fact" cited by the Court as the act that would be undone by issuing a writ of prohibition, as opposed to the circuit court's three orders releasing the defendants from custody and suspending the remainder of their terms of incarceration.  Id. at 461, 281 S.E.2d at 861.

In contrast to the decision in In re: Department of Corrections, this Court has, on several occasions, issued a writ of prohibition notwithstanding the fact that it would undo an act already done.  See, e.g., Charlottesville Newspapers, Inc. v. Berry, 215 Va. 116, 118, 206 S.E.2d 267, 268 (1974) (issuing writ of prohibition preventing enforcement of order denying public access to pleadings in civil actions

---

[15] I recognize that in the case of In re: Commonwealth's Attorney, we "note[d] that neither prohibition nor mandamus will lie to undo acts already done."  265 Va. at 319 n.4, 576 S.E.2d at 462 n.4 (citing In re: Dep't of Corrs., 222 Va. at 461, 281 S.E.2d at 861).  But, as I previously pointed out, the statement, enunciated in a footnote, did not form the basis of the Court's holding in that case.

and ordering "that the orders of the Circuit Court of Albemarle County which may be in conflict herewith, be, and the same hereby are, declared unenforceable"); Flanary v. Morton, 197 Va. 416, 417-18, 90 S.E.2d 470, 471 (1955) (because the circuit court did not have "the essential equity jurisdiction to entertain" a certain suit and an injunction granted in the suit was without validity and of no effect, a writ of prohibition was issued and the circuit court was "prohibited from having or holding any further proceedings in said equity suit . . . and from enforcing the said injunction"); Burroughs, 90 Va. at 56, 17 S.E. at 746 (affirming issuance of a writ of prohibition to prevent a justice of the peace without jurisdiction from awarding a new trial, after the justice had already granted a new trial); Commonwealth v. Latham, 85 Va. 632, 633-34, 8 S.E. 488, 488-89 (1889) (issuing a writ of prohibition directed to a judge who acted in excess of his jurisdiction when he enjoined the levy for a debt in favor of the Commonwealth, thereby preventing enforcement of an injunction already issued in the trial court); James v. Stokes, 77 Va. 225, 227-31 (1883) (where a justice of the peace assumed jurisdiction of a case involving a debt that exceeded the jurisdictional amount over which the justice had jurisdiction, this Court affirmed the issuance of a writ of prohibition against the justice even though judgment

had been entered, writs of fieri facias had issued, and partial collection on the judgment had occurred); French v. Noel, 63 Va. (22 Gratt.) 454, 456 (1872) (holding that a writ of prohibition was "the proper remedy for the plaintiff in such a case as this, to prevent and arrest the said unauthorized proceedings, and to have them declared null and void; and that the said remedy still continues to exist, notwithstanding the said judgment of the said [c]ircuit court was rendered before the rule was awarded in this case" (emphasis added)); Jackson v. Maxwell, 26 Va. (5 Rand.) 636 (1826) (issuing a writ of prohibition to inferior court because that court was without jurisdiction when it granted a writ of prohibition to another court, and prohibiting enforcement of the inferior court's writ).

As with writs of mandamus, it appears that our cases are at odds regarding when a writ of prohibition should not issue because it would undo an act already done. I recognize that the cases I cited in the prior paragraph preceded our decision in In re: Department of Corrections, but, in the latter case, we did not state that we were adopting for the first time in the Commonwealth the rule that prohibition does not lie to undo an act already done. Clearly, this rule had been part of the common law for many years as reflected by the quote in In re: Department of Corrections from the 1866 decision in

Hoffman.  Furthermore, we did not distinguish our prior cases issuing the writ and thereby undoing acts already done.

There is, however, a basis upon which our cases can be harmonized.  In those cases where a writ of prohibition was issued, the act that either directly or indirectly was undone by the writ was an order of an inferior court.  As I pointed out previously, the Court in In re: Department of Corrections concluded that the act that would be undone by a writ of prohibition was the "accomplished fact" of three defendants' release from the penitentiary.  222 Va. at 461, 281 S.E.2d at 861.  The Court did not mention the circuit court's three orders, already entered, as the act that would be undone.

The distinction I draw is substantiated by the rationale used in In re: Department of Corrections:  " 'If the thing be already done, it is manifest the writ of prohibition cannot undo it, for that would require an affirmative act.' "  222 Va. at 461, 281 S.E.2d at 861 (emphasis added) (quoting Hoffman 71 U.S. (4 Wall.) at 162).  Obviously, in In re: Department of Corrections, it would have required an "affirmative act" to return those three defendants to confinement in the penitentiary.  Here, however, the Commonwealth requests in its petition for a writ of prohibition that the Circuit Court be prohibited from enforcing its order reducing Atkins' sentence to life

72

imprisonment and from reducing Atkins' death sentence in the absence of a jury finding that he is mentally retarded. That relief does not require anything to be undone by an "affirmative act" and is consistent with the type of relief we have given when issuing a writ of prohibition. See, e.g., Charlottesville Newspapers, 215 Va. at 118, 206 S.E.2d at 268 (issuing writ of prohibition to prevent enforcement of circuit court's order); Flanary, 197 Va. at 417, 90 S.E. at 471 (same).

Finally, as I previously explained, the Circuit Court's order setting aside Atkins' sentence of death and sentencing him to life imprisonment is a nullity and without force and effect. As such, the order, void from the outset, is treated as if it had never been entered in the first instance. See Berry v. F&S Fin. Mktg., 271 Va. 329, 333, 626 S.E.2d 821, 823 (2006). It is anomalous, to say the least, that a writ of prohibition under these circumstances would be undoing an act that was, in effect, never done in the first place.

## IV. CONCLUSION

In order to prevent a failure of justice, I would grant both a writ of mandamus and a writ of prohibition to compel the Circuit Court of York County to conduct the mandated hearing to determine whether Atkins is mentally retarded and to prohibit the Circuit Court from enforcing its order setting

aside Atkins' sentence of death and from taking any other action in Atkins' case other than conducting the mental retardation hearing and entering such orders as are relevant and necessary to that proceeding.  The Commonwealth has no other adequate remedy at law that would provide the type of complete relief necessitated by the peculiar facts of this case.  Justice and the rule of law demand that there be a remedy for the Circuit Court's failure to follow the mandates of this Court.[16]  For these reasons, I respectfully dissent.

---

[16] As I have already pointed out, Atkins' remedy for the Commonwealth's alleged Brady violations is a petition for a writ of habeas corpus. See supra note 9.