Present: Hassell, C.J., Lacy, Keenan, Koontz, Kinser, and
Lemons, JJ. and Carrico,[1] S.J.

DARYL RENARD ATKINS

v. Record No. 000395 OPINION BY JUSTICE CYNTHIA D. KINSER
June 6, 2003
COMMONWEALTH OF VIRGINIA


ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES


This capital murder case is presently before this
Court on remand from the Supreme Court of the United
States. Atkins v. Virginia, 536 U.S. 304, 321 (2002)
(Atkins III). The Supreme Court reversed this Court's
judgment in Atkins v. Commonwealth, 260 Va. 375, 534 S.E.2d
312 (2000) (Atkins II), and held that "the Constitution
'places a substantive restriction on the State's power to
take the life' of a mentally retarded offender." Atkins
III, 536 U.S. at 321 (quoting Ford v. Wainwright, 477 U.S.
399, 405 (1986)).

The defendant, Daryl Renard Atkins, was convicted in
the Circuit Court of York County of the capital murder of
Eric Michael Nesbitt and was sentenced to death. We
affirmed his conviction but remanded the case to the
circuit court for a new penalty proceeding. Atkins v.

---

[1] Chief Justice Carrico presided and participated in
the hearing and decision of this case prior to the
effective date of his retirement on January 31, 2003.

Commonwealth, 257 Va. 160, 180, 510 S.E.2d 445, 457 (1999) (Atkins I).  At re-sentencing, a different jury again fixed Atkins' punishment at death, and the circuit court imposed the death penalty in accordance with the jury verdict. Atkins II, 260 Va. at 378-79, 534 S.E.2d at 314.

On appeal from the second penalty proceeding, Atkins argued, among other things, that this Court, as part of our proportionality review, see Code § 17.1-313(C), should commute his sentence of death to life imprisonment because he is mentally retarded.  Atkins II, 260 Va. at 386, 534 S.E.2d at 318.  We rejected his argument and affirmed the judgment of the circuit court.[2]  Id. at 390, 534 S.E.2d at 321.  Based on the record before us and considering "both the crime and the defendant," Code § 17.1-313(C), we could not say that Atkins' death sentence was "excessive or disproportionate to sentences generally imposed in this Commonwealth for capital murders comparable to Atkins' murder of Nesbitt."  Atkins II, 260 Va. at 390, 534 S.E.2d at 321.  Nor were we willing to commute Atkins' sentence of death to life imprisonment because of his IQ score.  Id.

_____

[2] Atkins II was decided by a divided Court.  Atkins II, 260 Va. at 390-96, 534 S.E.2d 321-24 (Hassell, J., joined by Koontz, J., concurring in part and dissenting in part); id. at 396-97, 534 S.E.2d at 324-25 (Koontz, J., joined by Hassell, J., dissenting).

Thereafter, Atkins successfully petitioned the Supreme Court of the United States for a writ of certiorari. Atkins v. Virginia, 533 U.S. 976 (2001) (order granting writ of certiorari). The Supreme Court concluded that a national legislative consensus against the execution of mentally retarded offenders had developed since its decision in Penry v. Lynaugh, 492 U.S. 302 (1989). Atkins III, 536 U.S. at 316. The Court identified two reasons consistent with that consensus to justify a categorical exclusion of the mentally retarded from execution. Id. at 318. First, neither of the justifications for recognizing the death penalty, retribution and deterrence, applies to mentally retarded offenders. Id. at 318-19. Second, the diminished capacity of mentally retarded offenders places them at greater risk of wrongful execution. Id. at 320-21. Thus, the Supreme Court reversed our judgment in Atkins II and remanded the case to this Court for "further proceedings not inconsistent with" its opinion. Atkins III, 536 U.S. at 321.

Before addressing what further proceedings are necessary and would be consistent with the Supreme Court's decision, we must first determine whether the Supreme Court decided that Atkins is, in fact, mentally retarded, thus requiring this Court to commute his sentence of death to

life imprisonment.  We conclude that the Supreme Court did not make that determination, nor has the question of Atkins' mental retardation been answered at any point in his case.

In Atkins II, after summarizing the testimony of the two forensic clinical psychologists who testified at the re-sentencing hearing, we stated that the jury "heard extensive, but conflicting, testimony from [the psychologists] regarding Atkins' mental retardation."  260 Va. at 388, 534 S.E.2d at 320.  Continuing, we held that "[t]he question of Atkins' mental retardation is a factual one, and as such, it is the function of the factfinder, not this Court, to determine the weight that should be accorded to expert testimony on that issue."  Id.  The Supreme Court did not reverse that portion of our holding in Atkins II. Nor did the Supreme Court state whether the issue of mental retardation is a question of fact or law.

The Supreme Court did, however, state that, "[t]o the extent there is serious disagreement about the execution of mentally retarded offenders, it is in determining which offenders are in fact retarded."  Atkins III, 536 U.S. at 318-19.  Acknowledging that the Commonwealth of Virginia disputes whether Atkins suffers from mental retardation, the Court noted that "[n]ot all people who claim to be

4

mentally retarded will be so impaired as to fall within the range of mentally retarded offenders about whom there is a national consensus." Id. at 317. But, the Court did not decide which defendants fit within that range or whether Atkins does, nor did it define the term "mental retardation." Instead, the Court left " 'to the States the task of developing appropriate ways to enforce the constitutional restriction upon its execution of sentences.' " Id. (quoting Ford, 477 U.S. at 405).

We also note that the jury at the re-sentencing hearing did not resolve the question of Atkins' mental retardation. Pursuant to the provisions of Code § 19.2-264.4(B)(vi), the jury was required to consider evidence of mental retardation in mitigation of capital murder, but it was not required to make a definitive determination whether Atkins suffers from mental retardation. As we pointed out in Atkins II, the re-sentencing jury was instructed "to consider any evidence in mitigation of the offense, and the jury obviously found that Atkins' IQ score did not mitigate his culpability for the murder of Nesbitt." 260 Va. at 388, 534 S.E.2d at 320.

Although Atkins acknowledges on brief that the Supreme Court did not make an explicit finding with regard to whether he suffers from mental retardation, he,

5

nevertheless, argues that the Court implicitly concluded that he is mentally retarded.  Otherwise, according to Atkins, he would not have had standing to raise the question whether the Eighth Amendment proscribes execution of a mentally retarded offender and the Supreme Court's decision would be an advisory opinion.  We do not agree.

In granting Atkins' petition for a writ of certiorari, the Supreme Court decided to revisit the legal issue that it had previously considered in Penry and, accordingly, framed the issue as "[w]hether the execution of mentally retarded individuals convicted of capital crimes violates the Eighth Amendment[.]"  Atkins v. Virginia, 534 U.S. 809 (2001)(amended order granting writ of certiorari).  Atkins had standing to raise that constitutional issue because of the allegations, evidence, and argument presented in the circuit court, and on appeal to this Court, that he is mentally retarded.  He demonstrated a " 'personal stake in the outcome[,]' " thereby " 'assur[ing] that concrete adverseness which sharpens the presentation of issues' necessary for the proper resolution of constitutional questions." City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983) (quoting Baker v. Carr, 369 U.S. 186, 204 (1962)).

The Supreme Court resolved the legal issue by announcing a new rule of constitutional law and then

remanded Atkins' case to this Court for further proceedings not inconsistent with that new rule. Since the controverted factual question whether Atkins suffers from mental retardation has never been resolved, any further proceeding, consistent with the Supreme Court's remand, must be one in which that question is answered and the Eighth Amendment prohibition against the execution of mentally retarded offenders is applied to that factual determination. Such a proceeding will not render the Supreme Court's decision in Atkins III advisory but will implement that decision.[3]

The Supreme Court's remand in this case is procedurally similar to the remand in Ford v. Wainwright. There, the Supreme Court held that the Eighth Amendment prohibits a State from executing an insane prisoner. 477 U.S. at 410. The Court then stated that the prisoner's "allegation of insanity in his habeas corpus petition, if proved, therefore, would bar his execution." Id. Although the Court found that the "State's procedures for

---

[3] Our conclusion is not altered by the Commonwealth's argument on brief in the Supreme Court that Atkins is not a mentally retarded individual and that, therefore, any decision by that Court would be an advisory opinion. The Court obviously rejected the Commonwealth's position but, in its role as an appellate court, did not resolve the underlying disputed factual issue regarding Atkins' mental retardation.

determining sanity [were] inadequate to preclude federal redetermination of the constitutional issue[,]" it, nevertheless, left to "the State the task of developing appropriate ways to enforce the constitutional restriction upon its execution of sentences." Id. at 416-17. The Court then remanded the proceeding to a federal district court for a de novo evidentiary hearing on the question of the prisoner's competence to be executed. Id. at 418. The Supreme Court does not "deny standing simply because the 'appellant, although prevailing . . . on the federal constitutional issue, may or may not ultimately win.' " Orr v. Orr, 440 U.S. 268, 273 (1979) (quoting Stanton v. Stanton, 421 U.S. 7, 18 (1975)).

Turning now to consider what type of proceeding is necessary and consistent with the Supreme Court's opinion, we note that the General Assembly, in response to the Supreme Court's giving to the States the task of developing an appropriate way to enforce its constitutional restriction on the execution of the death penalty, enacted emergency legislation that is already effective. See Code §§ 8.01-654.2, 18.2-10, 19.2-175, 19.2-264.3:1, 19.2-264.3:1.1, 19.2-264.3:1.2, 19.2-264.3:3, and 19.2-264.4. In that legislation, the General Assembly, among other things, defined the term "mentally retarded."

8

> "Mentally retarded" means a disability, originating before the age of 18 years, characterized concurrently by (i) significantly subaverage intellectual functioning as demonstrated by performance on a standardized measure of intellectual functioning administered in conformity with accepted professional practice, that is at least two standard deviations below the mean and (ii) significant limitations in adaptive behavior as expressed in conceptual, social and practical adaptive skills.

Code § 19.2-264.3:1.1(A). The General Assembly also provided that a defendant has the burden of proving mental retardation by a preponderance of the evidence. Code § 19.2-264.3:1.1(C).

In light of this legislation, which is applicable to Atkins' case, see Code § 8.01-654.2, the Supreme Court's mandate requiring further proceedings not inconsistent with its opinion, and the fact that the question of Atkins' mental retardation has never been answered, we conclude that this case must be remanded to the Circuit Court of York County for a hearing on the sole issue of whether Atkins is mentally retarded as defined in Code § 19.2-264.3:1.1(A). In accordance with the provisions of Code § 8.01-654.2, which require this Court to consider a claim of mental retardation presented by a person sentenced to death before the effective date of the emergency legislation and to determine whether the claim is frivolous, and upon reviewing the evidence of mental

retardation presented at the re-sentencing hearing in Atkins II, 260 Va. at 386-90, 534 S.E.2d at 319-21, we find that Atkins' claim of mental retardation is not frivolous. Because Atkins first presented his claim to this Court on direct appeal from the re-sentencing hearing and the case is now being remanded to the circuit court where the sentence of death was imposed by a jury, "the circuit court shall empanel a new jury for the sole purpose of making a determination of mental retardation."  Code § 8.01-654.2. The hearing should conform to the requirements of the General Assembly's emergency legislation.

Thus, we will remand this case to the circuit court for further proceedings consistent with this opinion and with the opinion of the Supreme Court in Atkins III.

Remanded.