WELCH, Judge,
dissenting.
The majority affirms Anthony Lane’s conviction for capital murder. I respectfully disagree with the majority’s resolution of Issue I, regarding the trial court’s finding that Lane did not meet his burden of proving that he was mentally retarded, and Issue III, regarding the admission of Lane’s journal into evidence.
I.
I disagree with the majority’s resolution of Issue III, in which it determined that Lane’s journal with drawings and rap lyrics was relevant and admissible. The majority states: “The fact that Lane wrote [violent rap] lyrics makes it more likely, though not certain, that he held such violent behavior in high esteem. The fact that Lane valued that type of behavior is probative of both his motive and intent in shooting Wright and stealing his vehicle.” 169 So.3d at 1100. The majority’s conclusion is unsupported by the record or by reason. The evidence was inadmissible, and the admission of the evidence resulted in reversible error.
Lane filed a pretrial motion seeking preclusion of the journal, arguing that it contained “scribbling and doodling” and “ ‘wannabe’ rap lyrics”; that it was irrelevant; that it was written two years before the shooting so it was remote; and that it would be offered strictly to inflame the passions of the jury. (C. 279.) The State argued that it was relevant to the res *1143 gestae of the crime, and that it was relevant to prove intent. (R. 465.) It further argued that the evidence demonstrated what was important to Lane, “[w]hat he wanted to be doing with his life. Which was robbing and killing. Money. Murder.” (R. 465.) The trial court determined the journal was admissible because it was “some evidence, possibly, of [Lane’s] intent” to commit such a crime. (R. 471.)
On appeal, Lane argues again that the evidence was irrelevant and remote and that its admission violated Rules 401 and 403, Ala. R. Evid. Specifically, he argues that the journal was unrelated to the crime and that its references to guns and violence, without any context for the entries, revealed nothing about his motive or intent. Lane also argues that the evidence violated Rule 404, Ala. R. Evid., because it was offered solely to prove character and action in conformity with the actions described in the journal. All of Lane’s arguments have merit.
The majority correctly states that the trial court is vested with substantial discretion in determining whether to admit evidence at trial. Evidence is relevant if it has “any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” Rule 401, Ala. R. Evid. The journal, recovered from beneath a couch at Lane’s grandmother’s residence, had entries that dated approximately two years before the murder. The journal had no specific reference to Frank Wright, the victim, or to circumstances similar to this crime. The journal and lyrics included generalized references to guns and violence, but those references did not render the evidence relevant to motive or intent in this case.
“Remoteness with respect to the admissibility of evidence is a relative idea and varies in its application according to the facts of each case. Dorch v. State, 40 Ala.App. 475, 476, 115 So.2d 287 (1959).
“While remoteness of time alone does not render the prior event inadmissible, Fields v. State, 362 So.2d 1319, 1320 (Ala.Cr.App.1978), the trial court ‘is without discretion to admit a statement that is so remote as to time or circumstances that its relevance or materiality must rest in conjecture and speculation.’ Roberson v. State, 339 So.2d 100, 104 (Ala.Cr.App.), cert. denied, 339 So.2d 104 (Ala.1976).”
White v. State, 380 So.2d 348, 350 (Ala.Crim.App.1980), quoted in Oryang v. State, 642 So.2d 989, 997 (Ala.Crim.App.1994). This evidence was not only remote, it also had no relevance to the crime for which Lane was on trial. Without support from any testimony or other evidence in the record, the majority speculates: “The fact that Lane wrote such lyrics makes it, more likely, though not certain, that he held such violent behavior in high esteem.” 169 So.3d at 1100. The fact that Lane wrote the lyrics years before the crime established nothing about how he viewed violent behavior. The majority attempts to bootstrap its untenable holding by stating that the fact that Lane valued violent behavior (as evidenced by the lyrics) “is probative of both his motive and intent in shooting Wright and stealing his vehicle.” 169 So.3d at 1100. Even if writing rap lyrics about violence established that the songwriter held violent behavior in high esteem, and I do not agree that it does, it is sheer speculation to hold that valuing violent behavior somehow established motive or intent as to the robbery-murder of Wright.[18]
*1144 The error in the admission of the evidence was exacerbated by the fact that the State relied on it heavily at the sentencing phase as evidence of Lane’s bad character, and the trial court relied on it when sentencing Lane to death.
The majority’s analysis demonstrates that the trial court’s admission of the journal was based on speculation and conjecture and, I believe, that the evidence was not admissible. Even if the evidence were relevant, however, Lane correctly argues that the evidence should have been excluded because its probative value was substantially outweighed by its unfair prejudice. Rule 403, Ala. R. Evid. Because the evidence had no relation to the specific crime for which Lane was being tried, the State actually used the evidence to impugn Lane’s character and to argue repeatedly that the evidence demonstrated “who he is” (R. 683, 684, 685, 686, 688) and conveyed “the motto of his life” (R. 685). The State argued that the rap lyrics established that Lane valued violent behavior and that, because he valued violent behavior, he must have killed Wright. By encouraging the jury to convict Lane based on the contents of the journal, the State essentially used the journal and the lyrics as character evidence and then improperly argued that Lane had acted in conformity with his bad character when he killed Wright. This is clearly a violation of Rule 404(a)(1), Ala. R. Evid., which states that “[ejvidence of a person’s character or a trait of character is not admissible for the purpose of proving action in conformity therewith.... ” Similarly, Rule 404(b), Ala. R. Evid., states:
“Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. ...”
Lane did not argue in the trial court that the admission of the evidence violated Rule 404, Ala. R. Evid., so this portion of the argument must be reviewed for plain error. Rule 45A, Ala. R.App. P. I agree with Lane that the exclusionary rule should have prevented admission of this evidence because it was offered to show that he was a “bad” person and to encourage to the jury to convict him based on his propensity for violence as demonstrated by his years-earlier authorship of rap lyrics. E.g., Moore v. State, 49 So.3d 228 (Ala.Crim.App.2009). Thus, Lane’s conviction should also be reversed on the ground that the admission of the journal violated Rule 404, Ala. R. Evid., and resulted in plain error. For the same reasons discussed above with regard to the unfair prejudice that resulted from the admission of this evidence, I would argue that the error adversely affected Lane’s substantial rights, thus rising to the level of plain error at the guilt phase. Furthermore, to the extent the trial court admitted the journal as proof of Lane’s intent, the trial court failed to instruct the jury on the limited purpose for which it could consider that evidence pursuant to Rule 404(b), thus allowing the jury to consider it for any purpose, including as proof of Lane’s bad character. Therefore, the trial court’s failure to instruct the jury about the limited purpose for which it could consider the *1145 evidence further constituted plain error. Ex parte Billups, 86 So.3d 1079 (Ala.2010).
II.
In addition to my belief that Lane’s conviction should be reversed based on the erroneous admission of Lane’s journal, see discussion in Part I above, I believe that Lane was erroneously sentenced to death. I believe that the trial court in this case abused its discretion by failing to properly weigh the evidence of adaptive deficiencies that must be found in order to exempt a mentally retarded capital-murder defendant from the death penalty.
I do not dispute that the question of mental retardation exempting a defendant from the death penalty is a question of fact to be decided by the trial judge.
“'“The question of [whether a capital defendant is mentally retarded] is a factual one, and as such, it is the function of the factfinder, not this Court, to determine the weight that should be accorded to expert testimony of that issue. Smith v. State, [Ms. CR-97-1258, Jan. 16, 2009] — So.3d [-] at - [(Ala.Crim.App.2007) (opinion on return to fourth remand) ](quoting Atkins v. Commonwealth, [266 Va. 73,] 581 S.E.2d 514, 515 (2003)). As the Alabama Supreme Court has explained, questions regarding weight and credibility determinations are better left to the circuit courts, Vhich [have] the opportunity to personally observe the witnesses and assess their credibility.’ Smith v. State, [Ms. 1060427, May 25, 2007] — So.3d [-] at - [(Ala.2007)] (quoting Smith v. State, [Ms. CR-97-1258, Sept. 29, 2006] — So.3d -, - (Ala.Crim.App.2006) (Shaw, J., dissenting) (opinion on return to third remand)).” ’ ”
Smith v. State, 112 So.3d 1108, 1127 (Ala.Crim.App.2012) (quoting Morris v. State, 60 So.3d 326, 339-41 (Ala.Crim.App.2010), quoting in turn Byrd v. State, 78 So.3d 445, 450 (Ala.Crim.App.2009)). Nor do I dispute that
“Alabama appellate courts have determined that until the Alabama Legislature establishes a definition for mental retardation to be used in determining Atkins[ v. Virginia, 536 U.S. 304 (2002),] claims, Alabama courts will continue to review such claims ‘on a case-by-case basis and to apply the guidelines that have been judicially developed thus far.’ Morrow v. State, 928 So.2d 315, 324 (Ala.Crim.App.2004).”
Morris v. State, 60 So.3d 326, 339-40 (Ala.Crim.App.2010) (footnote omitted).
It appears to me that the trial court determined that Lane was not mentally retarded based on the following evidence submitted during the guilt phase: that Lane was functioning relatively on his own with little day-to-day supervision and that he could read and write and put words together in a coherent manner “consistent with the prevailing rap tunes that are out there today in this world.” (R. 826.) The trial court further considered the lack of evidence presented on cross-examination of Dr. John Goff, a clinical neuropsychologist, during the post-guilt phase Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), hearing.[19] However, the trial court did not specifically evaluate the specific “skill areas” associated with adaptive functioning to determine whether adaptive deficiencies were present. This, in my opinion, as explained below, is not *1146 the evaluation Atkins intended when fact-finders are déciding questions of mental retardation. Moreover, it is clear to me that the court included in its weighing process evidence adverse to Lane that was not pertinent to any skill area associated with adaptive functioning.
The United States District Court for the Northern District of Alabama, in Holladay v. Campbell, 463 F.Supp.2d 1324 (N.D.Ala.2006), whose analysis and ruling were affirmed by the Eleventh Circuit Court of Appeals in Holladay v. Allen, 555 F.3d 1346 (11th Cir.2009), provides Alabama circuit courts a clear and proper framework to follow when evaluating questions of mental retardation under Atkins.
“[T]he Alabama Supreme Court has defined the test for mental retardation that rises to the level of prohibiting execution as having three components: (1) significantly subaverage intellectual functioning (i.e., an IQ of 70 or below); (2) significant or substantial deficits in adaptive behavior; and (3) the manifestation of these problems during the defendant’s developmental period (i.e., before the defendant reached age eighteen). Smith v. Alabama, [Ms. 1060427] — So.3d -, at - (Ala. May 25, 2007) (not yet released for publication); Ex Parte Perkins, 851 So.2d 453, 456 (Ala.2002).”
Holladay v. Allen, 555 F.3d at 1353.
In Lane’s case, the trial court found that Lane had the necessary I.Q. of 70, and, thus, that Lane met the first component of having a significantly subaverage I.Q. The trial court did not make a specific finding regarding the third component— when evidence of mental retardation manifested: however, the trial court noted during the trial that Lane was 19 years old when the crime was committed.
Regarding the second component— adaptive behavior — the Eleventh Circuit Court of Appeals has stated the following:
“[Significant or substantial deficits in adaptive behavior are defined as ‘concurrent deficits or impairments in present adaptive functioning in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health and safety.’ American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 39 (4th ed. 1994). In other words, to satisfy the second prong of the test, the evaluator must find that the defendant has deficiencies in two of those listed areas.”
Holladay v. Allen, 555 F.3d at 1353 (emphasis added).
As noted in the majority opinion, the defense presented two witnesses at the Atkins hearing — Lane’s older sister, Brittany Brooks, and Dr. Goff. The sister presented testimony concerning numerous adaptive deficiencies. However, her testimony was interrupted by an unexpected recess, and she did not return the following day for the resumption of her examination. The defense informed the trial court that she did not realize that she was supposed to return the following day but that she could be present 25 minutes later. However, the court refused to wait and stated that Brooks’s testimony would be discounted because the State had been denied an opportunity to cross-examine her. Dr. Goff, testifying as an expert, stated that, based on his evaluation of Lane, his discussions with family members, and test scores from various tests administered by Dr. Goff, Lane was deficient in all areas of adaptive behavior. Dr. Goff acknowledged that he was unable to locate for his review *1147 certain medical and school records to support certain assertions made by Lane’s family members; however, he stated that information obtained from family could be used to form his opinion as to the degree of Lane’s mental retardation. The lack of medical records does not rebut Dr. Goffs opinion regarding Lane’s mental retardation. The State presented no witnesses; rather, it relied solely on its cross-examination of Dr. Goff and the adoption of the evidence presented during the guilt phase of the trial.
The trial court’s findings regarding the Atkins hearing are quoted in the majority opinion. Specifically, the trial court considered five factors that persuaded it that the preponderance of the evidence disclosed that Lane was functioning with no significant limitations due to his low I.Q. Those factors were:
1) The trial court stated that it placed great weight against finding mental retardation based on how this crime was committed, i.e., “[w]hat it took to commit the crime. The observation of the victim. The ability to wait and stalk him, basically.” (R. 825.)
2) The motive behind the killing, which the trial court stated it believed, clearly, was to rob Wright of his money and possibly the vehicle.
3) Review of the trial testimony and the evidence or lack of evidence that came out during Dr. Goffs cross-examination.
4) Evidence indicating that Lane was “functioning relatively on his own, with little day-to-day supervision.” (R. 826.)
5) Evidence of Lane’s journal indicated that Lane “was able to write and read and put words together in a coherent manner, consistent with the prevailing rap tunes that are out there today in this world.” (R. 826.)
The majority states that evidence of two adaptive deficiencies may be overcome by the overall weight of other evidence.
“‘[A]lthough it is true that as a threshold matter, the psychological evaluator must determine that the defendant was deficient in at least two areas of adaptive behavior, these shortcomings are not evaluated in a vacuum.... Even where there are indications of shortfalls in adaptive behavior, other relevant evidence may weigh against an overall finding of deficiency in this area.’ Smith v. State, 112 So.3d 1108, 1133 (Ala.Crim.App.2012), citing Lewis v. State, 889 So.2d 623, 698 (Ala.Crim.App.2003).”
169 So.3d at 1094.
First, the ellipsis in the above quote represents the omission of a citation to Holladay v. Allen. In Holladay v. Allen, the Eleventh Circuit Court of Appeals explained that shortcomings in adaptive behavior are not evaluated in a vacuum, because
“[individuals with mental retardation have strengths and weaknesses, like all individuals. Indeed, the criteria for diagnosis recognizes this by requiring a showing of deficits in only two of ten identified areas of adaptive functioning. Dr. Ackerson’s [20] predominant focus on Holladay’s actions surrounding the crime suggests that she did not recognize this.”
555 F.3d at 1363. Thus, I do not believe that the majority’s statement is an accurate statement of the law. Lewis v. State, 889 So.2d 623, 698 (Ala.Crim.App.2003), was argued and submitted to this Court *1148 before Atkins was released. This Court, citing Ex parte Smith, [Ms. 1010267, March 14, 2003] — So.3d - (Ala.2003), found that, as was the case in Smith, it was unnecessary to remand Lewis’s case for an Atkins hearing because the record disclosed that, under the broadest definition of mental retardation, the record did not support a finding that Lewis was mentally retarded. The same cannot be said in this case, where there was evidence in the form of an expert evaluation determining that Lane was mentally retarded to such an extent that he was exempt from execution.
Of the 10 skill areas associated with adaptive behavior — 1) communication, 2) self-care, 3) home living, 4) social/interpersonal skills, 5) use of community resources, 6) self-direction, 7) functional academic skills, 8) work, 9) leisure, and 10) health and safety — the criteria for a diagnosis of mental retardation requires a showing of deficits in only 2 of those areas. Holladay v. Allen, 555 F.3d at 1363. In Holladay v. Campbell, the United States District Court noted that because Holladay’s failure in “functional academic skills” was undisputed, and, thus, established as an adaptive deficiency, proof of only one additional adaptive deficiency was required to satisfy the adaptive-deficiency component of the three-prong Atkins test. The district court made a list of the evidence tending to show limitations in adaptive functioning and a list of the evidence tending to show an absence of limitations in adaptive functioning. The court then noted the skill area or areas associated with the evidence and the source of the evidence. In weighing the evidence, the district court appeared to consider each skill area independently to determine whether Holladay had limitations, i.e., failed to adapt in that particular skill area. It does not appear to me that the trial court in this case considered each skill area.
Moreover, the district court in Holladay v. Campbell stated that, “[i]n deciding an issue such as this, a judge has to avoid any consideration of personal attitude about the death penalty, any personal attitude about the Atkins case and any undue personal attitude about the heinous nature of the offenses committed.” 463 F.Supp.2d at 1347. In reference to the alleged complicated nature of Holladay’s crime, the magistrate judge’s report found: “ ‘Other indications that Holladay, as an adult, possessed adaptive function skills beyond the merely retarded range were documentary evidence of the events leading up to the 1986 murder... ’ (Report and Recommendation at 76-77).” Holladay v. Campbell, 463 F.Supp.2d at 1346. In response to this finding, the district court stated:
“This court is at a loss to see which of the ten factors this bears on. It would appear that such criminal conduct would indicate at least social limitations. It is doubtful that it bolsters any other factor.”
Holladay v. Campbell, 463 F.Supp.2d at 1346. Therefore, based on that reasoning, the way a murder was committed, would be irrelevant except in circumstances where the planning and execution of the plan are truly complex. Such is not Lane’s case. Thus, the trial court should not have placed “a lot of weight on how this crime was committed,” on the fact that the crime was for the purpose of robbery, or that it was a “senseless killing.” (R. 825.)
The district court further noted:
“Disputes are likely to continue to arise regarding whether state law holdings that the ability to plan and commit crimes avoids findings of mental retardation. Such holdings may be a circular evasion of the Atkins majority opinion. See Clemons v. State, 55 So.3d 314 (Ala. *1149 Crim.App.2003), where the pertinent part of the court’s opinion primarily quotes the trial court’s order and then adopts its findings without discussion of the legal issues. If such defendants have ‘adapted,’ query, to what? ... It is likely that any defendant who is convicted of capital murder has committed a heinous crime. Neither Atkins nor In re Holladay[, 331 F.3d 1169 (11th Cir.2003),] suggest that such crimes render a defendant ineligible for exemption from the death penalty based on mental retardation.”
Holladay v. Campbell, 463 F.Supp.2d at 1347 n. 30.
The trial court in this case did find that Lane was functioning relatively on his own, with little day-to-day supervision. I presume that this finding was intended to establish that Lane had adapted in the skill area of self-care. However, it is equally possible that this evidence suggested a deficit in the skill area of home living. The trial court also found that Lane was able to write and read and put words together in a coherent manner, consistent with the prevailing rap tunes. I presume that this finding was intended to establish that Lane had adapted in the skill areas of communication, self-direction, and leisure. Even with these presumptions in favor of the trial court’s ruling, the trial court made no findings at all as to functional academic skills, work, or health and safety. Dr. Goff testified that Lane was deficient in each of those areas, and his testimony was undisputed.
Thus, it appears to me that Lane established adaptive deficiencies in more than two skill areas of adaptive functioning. Therefore, I do not believe that Lane’s sentence was properly imposed following a correct consideration of the evidence regarding mental retardation. Lane proved the three components necessary to establish that he is mentally retarded. Therefore, in my opinion, Lane is exempt from the imposition of a death sentence.
For the foregoing reasons, I dissent.

On Return To Remand

BURKE, Judge.
Anthony Lane was convicted of murder made capital because it was committed during the course of a robbery in the first degree, see § 13A-5-40(a)(2), AIa.Code 1975. The jury, by a vote of 10-2, recommended that Lane be sentenced to death. The trial court accepted the jury’s recommendation and sentenced Lane to death.
On November 8, 2013, this Court affirmed Lane’s conviction but remanded the case for the trial court to amend its sentencing order because the initial order improperly found a statutory aggravating circumstance to exist and improperly negated a statutory mitigating circumstance. Lane v. State, 169 So.3d 1076 (Ala.Crim.App.2013). Specifically, the trial court found and considered the aggravating circumstance of murder for pecuniary gain, see § 13A-5-49(6), Ala.Code 1975, despite the fact that it also considered the aggravating circumstance that the murder was committed during a robbery, see § 13A-5-49(4), Ala.Code 1975. This was error under Hodges v. State, 856 So.2d 875, 891 (Ala.Crim.App.2001) (“[W]hen a trial court evaluates the aggravating circumstances applicable to a defendant convicted of robbery-murder, a court may not consider the fact that money was taken from the victim as constituting the aggravating circumstance that the murder was committed for pecuniary gain.”). Additionally, the trial court improperly negated the mitigating circumstance that Lane had no significant history of prior criminal activity, see § 13A-5-51(1), Ala.Code 1975, by considering Lane’s juvenile record. This was error under Ex parte Burgess, 811 So.2d *1150 617, 624 (Ala.2000) (“Alabama law explicitly precludes a trial court from using juvenile adjudications to negate the mitigating circumstance of no significant history of prior criminal activity.”)- However, in Burgess, the Alabama Supreme Court held “that a trial court may consider a defendant’s juvenile adjudications to be a relevant consideration in deciding what weight to assign to the statutory mitigating circumstances of a defendant’s lack of a significant prior criminal history and a defendant’s age at the time of the offense.” Id.
On return to remand, the trial court has filed an amended sentencing order in which it found the existence of only one aggravating circumstance, i.e., that the murder was committed during the course of a robbery in the first degree. The trial court specifically found that none of the other statutory aggravating circumstances enumerated in § 13A-5-49, Ala.Code 1975, had been proven. The trial court also found the existence of two statutory mitigating circumstances: the defendant’s age at the time the crime was committed, see § 13A-5-51(7), Ala.Code 1975, and that the defendant had no significant criminal history, see § 13A — 5—51(1), Ala.Code 1975.
The trial court stated that it assigned “a great amount of weight” to the aggravating circumstance of robbery-murder. (R3.19.)[1] As to the two statutory mitigating circumstances, the trial court stated:
“Based upon Burgess, the Court hereby assigns a medium amount of weight to the statutory' mitigating circumstances found in 13A-5-51(l), ‘The Defendant has no significant history of prior criminal activity’, and (7), ‘the age of the Defendant at the time of the crime.’ ”
(R3. 17.) The trial court then specifically found that the statutory mitigating circumstances enumerated in § 13A-5-51(2)-(6), Ala.Code 1975, were not proven and did not exist. However, the trial court did, note the testimony regarding Lane’s IQ and whether or not Lane was borderline mentally retarded. The remainder of the sentencing order is substantially similar to the trial court’s original order.
In the amended sentencing order, the trial court reweighed the statutory aggravating circumstance against both the statutory and nonstatutory mitigating circumstances and determined that the mitigating circumstances were “sufficiently outweighed” by the aggravating circumstance. (R3. 19.) Accordingly, the trial court again sentenced Lane to death. Lane filed a brief on return to remand and raised several issues regarding the trial court’s amended sentencing order.
I.
Lane contends that the “trial court diminished Mr. Lane’s mitigating circumstances by incorrectly and improperly relying on Mr. Lane’s juvenile record.” .(Lane’s brief on return to remand, at 5.) According to Lane, the amended sentencing order “continues to make Mr. Lane’s juvenile record ‘a conspicuous and dominating factor in the trial court’s weighing process’.... ” (Lane’s brief on return to remand, at 6), citing Burgess, 811 So.2d at 624.
In Burgess, the Alabama Supreme Court held that a trial court may use a defendant’s juvenile adjudications when assigning weight to the mitigating circumstances relating to age and lack of a significant criminal history. However, under the specific facts of Burgess, in which the trial court overrode the jury’s recommendation of life imprisonment without parole *1151 and sentenced the defendant to death, the Alabama Supreme Court held:
“The statements contained in the trial court’s painstaking written order in this very difficult case reflect that the trial court relied upon Burgess’s juvenile adjudications to give nominal weight not only to the two statutory mitigating circumstances, but also to other mitigating circumstances, including the jury’s recommendation. The trial court’s use of Burgess’s juvenile record — use indicated by the court’s numerous references to that record — to discount to inconsequen-tiality the numerous mitigating circumstances, in favor of the one aggravating circumstance, was an abuse of discretion.”
811 So.2d at 628. According to Lane, the same error exists in the amended sentencing order here.
First, Lane claims that the trial court provided no other reasons for diminishing the weight of the two statutory mitigating circumstances other than Lane’s juvenile record. Therefore, he says, the trial court “essentially and erroneously [found] that the mitigating factor under Alabama Code section 13A-5-51(l) does not exist.” (Lane’s brief on return to remand, at 8.) However, this statement is directly contradicted by the amended sentencing order, which specifically provides that the trial court found two statutory mitigating circumstances “regarding (1) No significant criminal history and (2) The Defendant’s age at the time he committed the crime.” (Lane’s brief on return to remand, at 8.)
Lane concedes that the amended order “is going as far as allowable under Burgess to reduce the weight of the existing mitigating circumstances in this case.” (Lane’s brief on return to remand, at 9.) Yet Lane still claims that the amended order makes Lane’s juvenile history a conspicuous and dominating factor in the trial court’s weighing process that is prohibited by Burgess. Again, this is contradicted by the sentencing order, which stated that the trial court assigned a “medium” amount of weight to both mitigating circumstances. (R3. 17.) Therefore, the trial court did not, as did the court in Burgess, use Lane’s juvenile record “to give nominal weight” to the mitigating circumstances. 811 So.2d at 628.
Second, Lane argues that the trial court, in its amended sentencing order, “improperly altered the weight given to the mitigating circumstance of Mr. Lane’s age.” (Lane’s brief on return to remand, at 9.) However, in its original sentencing order, the trial court did not specify the weight it assigned to that mitigating circumstance. Thus, there is no evidence indicating that the trial court diminished the weight it assigned to that particular mitigating circumstance in its amended order.
Third, Lane asserts that the “trial court again incorrectly stated that Mr. Lane had eight juvenile adjudications.” (Lane’s brief on return to remand, at 9.) According to Lane, the presentence report indicates that Lane had five arrests that resulted in probation, while the remainder of his charges were dismissed or had an unknown disposition. Therefore, Lane argues that the trial court erred by using eight adjudications as opposed to five when it discounted the mitigating circumstances. However, the sentencing order provides that Lane had “eight (8) separate juvenile cases, some involving multiple offenses.” (R3. 16) (emphasis added). Thus, the amended order in no way indicates that the trial court considered eight separate adjudications. Accordingly, Lane’s assertion is refuted by the record.
Finally, Lane argues that “the trial court’s refusal to accord great weight to Mr. Lane’s age and lack of significant *1152 criminal history was error and cannot be reconciled with the constitutionally significant considerations relevant to Mr. Lane’s young age.” (Lane’s brief on return to remand, at 10.) Specifically, Lane cites Miller v. Alabama, — U.S. -, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), and Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), in support of his argument that 19-year-olds like Lane are “more susceptible to negative influences and have characters that are not as well formed as those of adults.” (Lane’s brief on return to remand, at 11.)
In Riley v. State, 166 So.3d 705 (Ala.Crim.App.2013), the appellant similarly argued that, although the trial court found his young age to be a mitigating circumstance, the court did not give his age the appropriate weight. This Court held:
“ ‘ “[i]n keeping with the dictates of the United States Supreme Court in Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), the sentencing authority in Alabama, the trial judge, has unlimited discretion to consider any perceived mitigating circumstances, and he can assign appropriate weight to particular mitigating circumstances. The United States Constitution does not require that specific weights be assigned to different aggravating and mitigating circumstances. Murry v. State, 455 So.2d 53 (Ala.Crim.App.1983), rev’d on other grounds, 455 So.2d 72 (Ala.1984). Therefore, the trial judge is free to consider each case individually and determine whether a particular aggravating circumstance outweighs the mitigating circumstances or vice versa. Moore v. Balkcom, 716 F.2d 1511 (11th Cir.1983). The determination of whether the aggravating circumstances outweigh the mitigating circumstances is not a numerical one, but instead involves the gravity of the aggravation as compared to the mitigation.”
“‘Ex parte Clisby, 456 So.2d 105, 108-09 (Ala.1984), cert. denied, Clisby v. Alabama, 470 U.S. 1009, 105 S.Ct. 1372, 84 L.Ed.2d 391 (1985).’”
166 So.3d at 706, quoting Morris v. State, 60 So.3d 326, 351 (Ala.Crim.App.2010).
Lane failed to show how the trial court abused its discretion by assigning a medium amount of weight to the mitigating circumstances it found to exist in his case. Under Burgess, the trial court’s assignment of weight to the mitigating circumstances was proper and was supported by the record. Accordingly, Lane’s arguments are without merit.
II.
Lane also raises the following arguments in his brief on return to remand: that the trial court ignored significant mitigation evidence regarding Lane’s mental and intellectual deficits (Lane’s brief on return to remand, at 11); that the trial court erred by considering lack of remorse in the weighing process (Lane’s brief on return to remand, at 13); that “the trial court’s inconsistent finding on the existence of the ‘heinous, atrocious, or cruel’ aggravator precludes its use in the weighing process” (Lane’s brief on return to remand, at 15); and that Lane’s death sentence violates Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) (Lane’s brief on return to remand, at 18). These arguments were raised in Lane’s initial brief and were addressed by this Court in the main opinion. Nothing in Lane’s brief on return to remand substantially differs from what was raised in his initial brief. Accordingly, we need not address those arguments again.
*1153 III.
Pursuant to § 13A-5-53, Ala.Code 1975, this Court is required to address the propriety of Lane’s conviction and sentence of death. Lane was indicted for and convicted of one count of murder made capital because it was committed during the course of a robbery, see § 13A-5-40(a)(2), Ala.Code 1975.
The record does not reflect that Lane’s sentence of death was imposed as the result of the influence of passion, prejudice, or any other arbitrary factor. See § 13A-5 — 53(b)(1), Ala.Code 1975.
The trial court correctly found that the aggravating circumstance outweighed the mitigating circumstances. In its sentencing order, the trial court stated that it found one aggravating circumstance, i.e., that Lane committed the capital offense while he was engaged in the commission of a robbery, see § 13A-5-49(4), Ala.Code 1975. The trial court then considered each of the statutory mitigating circumstances and found that two statutory mitigating circumstances were applicable: 1) that the defendant lacked a significant criminal history and 2) the age of the defendant at the time of the crime. As described above, the trial court found that each of those mitigating circumstances was entitled to a “medium” amount of weight. (R3. 17.) The trial court also found and considered nonstatutory mitigating circumstances “including [Lane’s] IQ of seventy (70).” (R3. 19.) The trial court’s sentencing order shows that it properly weighed the aggravating and mitigating circumstances and correctly sentenced Lane to death. The record supports the trial court’s findings.
Section 13A-5-53(b)(2), Ala.Code 1975, requires this Court to reweigh the aggravating and mitigating circumstances in order to determine whether Lane’s death sentence is proper. After independently weighing the aggravating and mitigating circumstances, this Court finds that Lane’s sentence of death is appropriate.
As required by § 13A-5-53(b)(3), Ala.Code 1975, this Court must now determine whether Lane’s sentence is excessive or disproportionate when compared to the penalty imposed in similar cases. In this case, Lane was convicted of one count of murder made capital because it was committed during a robbery. Sentences of death have been imposed for similar crimes throughout the State. See Byrd v. State, 78 So.3d 445 (Ala.Crim.App.2009); Melson v. State, 775 So.2d 857, 863 (Ala.Crim.App.1999); Washington v. State, 922 So.2d 145 (Ala.Crim.App.2005); and Robitaille v. State, 971 So.2d 43 (Ala.Crim.App.2005). “‘In fact, two-thirds of the death sentences imposed in Alabama involve cases of robbery/murder.’” Doster v. State, 72 So.3d 50, 122 (AIa.Crim.App.2010), quoting McWhorter v. State, 781 So.2d 257, 330 (Ala.Crim.App.1999). Therefore, this Court finds that Lane’s death sentence is neither excessive nor disproportionate.
Finally, this Court has searched the entire record for any error that may have adversely affected Lane’s substantial rights and has found none. See Rule 45A, Ala. R.App. P.
Accordingly, Lane’s conviction and sentence of death are due to be affirmed.
AFFIRMED.
WINDOM, P.J., and KELLUM and JOINER, JJ.', concur.
WELCH, J., dissents, with opinion.

. As Lane argues in his brief on appeal:
"Here, the excerpts do not make Mr. Lane *1144 any more likely to be a person of violent character — no more than Johnny Cash's lyric 'I shot a man in Reno just to watch him die’ makes Mr. Cash any more likely to have committed a murder.” (Lane’s brief, at p. 36), citing Andrea L. Dennis, Poetic (In)Justice? Rap Music Lyrics as Art, Life, and Criminal Evidence, 31 Colum. J.L. & Arts 1, 15 n. 90 (2007).

. I note that Lane could not submit evidence during his cross-examination by the State. It appears that what the trial court meant was that it discounted Dr. Goff’s testimony because he stated during cross-examination that he had been unable to obtain certain records to confirm information that he received from Lane's family.

. Dr. Ackerson's expert opinion was that Holladay was not mentally retarded to the degree that he could not be executed.